Johnson et al *v.* Kersh Lake Drainage District.

4-5501                                131 S. W. 2d 620

Opinion delivered May 29, 1939.

*Arthur J. Johnson* and *Coleman & Riddick,* for appellants.

*E. W. Brockman* and *Rose, Loughborough, Dobyns & House,* for appellee.

Holt, J. Appellants bring this appeal from the Lincoln chancery court.

The Kersh Lake Drainage District, embracing lands in Jefferson, Lincoln and Desha counties, was created by an order of the Circuit Court of Jefferson county on August 24, 1912, under Act 279 of 1909. Benefits were

assessed against each tract of land in the district in the total sum of $272,782.12, payable in annual installments. A contract for the improvement was let, the work completed and certificates of indebtedness issued to the contractor in payment.

A. J. Johnson, one of the appellants, owned and still owns 160 acres of land in this district the benefits to which were originally assessed at $1,600. Prior to 1931, he had paid installments of these tax benefits in the total sum of $1,628. The other appellant landowners to this litigation paid the full amount of benefits originally assessed against their lands, but counsel have agreed that such appellants will abide the decision of this court with reference to the Johnson land as controlling as to these other appellants.

In 1931, the commissioners of this district, acting upon the authority of Act 467 of 1919, made an additional assessment against the lands in question, such assessment being the interest on the original assessment as contemplated in the act. This tax levied as additional assessment on the Johnson land amounted to $104.

A suit was then filed by Johnson in the Lincoln chancery court against the district in which he alleged that the limits of the benefits accruing to his 160 acres of land in the district, amounted to $1,600, and prayed that the additional assessment of benefits made under Act 467, supra, be annulled. On October 19, 1931, the court found the issues in favor of Johnson and held that all legally assessed benefits had been paid, annulled the additional assessment, and permanently enjoined the district from collecting any additional taxes on Johnson's land. From this judgment of the court no appeal was taken.

The other appellants here brought a similar suit against the district, praying for similar relief to that granted Johnson, which prayer the court granted on June 15, 1932, and from this judgment of the court no appeal was taken.

The State Bank & Trust Company of Wellston, Missouri, in 1935 filed a suit at law against the Kersh Lake

Drainage District in the federal court for the eastern district of Arkansas, in Little Rock, in which it sought to recover a judgment against the district on certain of its certificates of indebtedness which had been assigned to it by the contractor. In this cause, the Federal District Court entered a judgment in favor of the trust company against the district for $54,655, and this judgment was subsequently affirmed by the Circuit Court of Appeals. *Kersh Lake Drainage District* v. *State Bank & Trust Company*, 85 Fed. 2d 643.

Thereafter the State Bank & Trust Company instituted suit in the federal court in Little Rock against the same commissioners of this same district, joining the county clerks and sheriffs of Jefferson, Lincoln and Desha counties, asking for a mandatory injunction to compel the collection of a tax of 6½ per cent. a year on the assessed benefits in the district to pay this judgment. The court issued the mandatory injunction as prayed for as follows: "It is, therefore, considered, ordered and decreed that a mandatory injunction issue requiring the defendant county clerks, N. M. Ryall and M. D. Newton, to extend upon the tax books of their respective counties a tax of 6½ per cent. of benefits assessed against each tract of land, railroad, and tramroad in the district for each of the years 1936 and following years until the whole of this decree has been satisfied. . . . It is further considered, ordered and decreed that the defendants, T. H. Free, Claude H. Holthoff and Emmett Warren, as commissioners of said district, be required to institute suits for the collection of all delinquent taxes of said district, and to prosecute the same with due diligence to a conclusion, and to see that the delinquent lands are sold promptly under the decree of foreclosure, and that they be required to do all things necessary, as commissioners of said district, to insure the prompt collection of the drainage taxes." This judgment of the court was affirmed by the Circuit Court of Appeals. *Kersh Lake Drainage District* v. *State Bank & Trust Company*, 92 Fed. 2d 783.

In accordance with the provisions of this mandatory injunction the county clerk of Lincoln county extended

a tax of 6½ per cent. on the original assessment of benefits of $1,600 against Johnson's 160-acre tract in this county. Johnson refused to pay this tax and the assessment against his land was returned delinquent.

The Kersh Lake Drainage District filed the present suit in the Lincoln chancery court pursuant to the order of the federal court to collect the delinquent tax against Johnson's land and the delinquent assessments against the other appellants to this litigation. In his answer, Johnson alleged that the tax sought to be collected was void and set up as a complete bar the decree of the Lincoln chancery court rendered on October 19, 1931, *supra*, in the former suit brought by him against the district, pleading *res judicata*. He also alleged that his lands were not embraced within the terms of the mandatory injunction for the reason that the injunction directed the county clerk to extend a tax on the assessed benefits in the district, and that there were no unpaid "assessed benefits" against his land. The other appellants here made similar allegations in their answer with respect to their lands and also pleaded the decree rendered by the Lincoln chancery court on June 15, 1932, in their favor as *res judicata*. The chancery court overruled the defenses set up by these appellants, entered a decree for the taxes and ordered the lands sold to satisfy them. The trial court was of the opinion that it was precluded by the federal court's order from considering any of the defenses interposed by Johnson or the other appellants.

The decree of the Lincoln chancery court, heretofore referred to, in the cause in which appellant, A. J. Johnson, was plaintiff and Kersh Lake Drainage District was defendant, and rendered on October 19, 1931, recites, among other things, the following: "The court being advised as to the law and facts in the premises, finds that the plaintiff is the owner in fee of the SW¼ of section 8, township 9 south, range 5 west; that said lands constitute a part of the Kersh Lake Drainage District of Jefferson, Lincoln and Desha counties, that said drainage district was organized by the judgment of the Jefferson circuit court on August 24, 1912, under act No. 279 of the Acts of 1909, and that said land was assessed

benefits of $1,600 by the assessors of said Kersh Lake Drainage District and said assessment of benefits was duly confirmed by the judgment of the circuit court of Jefferson county on February 3, 1913; that subsequent to the confirmation of the assessment of benefits, taxes were annually extended against plaintiff's said land, and from January 1, 1914, to and including the year 1929, payable in 1930, the plaintiff paid a tax in favor of Kersh Lake Drainage District and as a credit on the assessments of benefits made and confirmed against his land the total sum of $1,628; that the defendant commissioners over the protest of the plaintiff extended a total and further tax of $104 for the year 1930, payable in 1931, in favor of the Kersh Lake Drainage District, and the plaintiff has refused to pay and the foregoing described lands have been certified by the collector of Lincoln county to the chancery court of Lincoln county as delinquent for said amount, and said commissioner is about to sell said land for said delinquency.

"The court further finds that upon the payment by the plaintiff of the total assessed benefits in favor of Kersh Lake Drainage District in the sum of $1,600 against the SW¼ of section 8, township 9 south, range 5 west, all of the lien, right or interest of the Kersh Lake Drainage District against said lands by virtue of the improvement made by the board of commissioners in and for the Kersh Lake Drainage District became duly paid and satisfied, and the commissioners are without authority to extend further taxes against plaintiff's land collectible in the year 1931, or any other years.

"It is, therefore, considered, ordered and decreed that the lien of the Kersh Lake Drainage District against the SW¼ of section 8, township 9 south, range 5 west, by virtue of its assessment of benefits in the sum of $1,600 is fully satisfied and released; that the tax extended by the commissioners for 1930, collectible in 1931, is without authority and void, and the clerk of this court shall satisfy the record of the delinquent lands returned to him in 1931 as far as SW¼ of section 8, township 9 south, range 5 west, is concerned, and the defendant commissioners are permanently restrained from extend-

ing other and further taxes against the plaintiff's said land . . ."

The decree in the cause of W. A. Fish and others (the other appellants in the instant case) v. Kersh Lake Drainage District which was entered on June 15, 1932, is similar in effect.

In the instant case the decree of the lower court is in part as follows: ". . . said cause is heard upon the complaint filed, proof of publication of the notice of the advertisement of said lands, the certified list of delinquent lands filed by the collector of Lincoln county for the years 1935 and 1936, tax records including said lands for said years, separate answer of A. J. Johnson, with certified copy of the decree of the Lincoln chancery court in the case of *A. J. Johnson* v. *Kersh Lake Drainage District,* and in the case of *W. A. Fish, et. al.* v. *Kersh Lake Drainage District,* attached as exhibits to said answer, together with all amendments thereto, and the written statement of Victor Felly, from all of which the court finds: . . .

"And the court further finds that since the filing of the complaint herein, separate answer filed by A. J. Johnson, claiming to be the owner of the following tract of land lying and being situated in the county of Lincoln and State of Arkansas, to-wit: southwest quarter (SW¼) of section eight (8), township nine (9) south, range five (5) west, it being contended in said answer that the total amount of the original assessed benefits against said lands had been fully paid; that the postponed installments of benefits so assessed did not bear interest and that the lien created against said land by the original assessment of benefits had been fully discharged. In said answer the said A. J. Johnson also contended that the decrees in the cases of *A. J. Johnson* v. *Kersh Lake Drainage District* and *W. A. Fish, et al,* v. *Kersh Lake Drainage District* were *res judicata* of the issues in this suit. Said answer also contained a prayer for relief for the owner of said lands and for the owners of other lands similarly situated. . . .

"The court finds all of the issues against the said A. J. Johnson and other property owners similarly situated, which said issues were set out in the answer filed by A. J. Johnson and amendments thereto."

The decree then adjudicates that the taxes levied on the lands of A. J. Johnson and the other answering defendants were delinquent and ordered the commissioners to sell the lands to satisfy the taxes. From this decree of the court comes this appeal.

Appellants state the issue before us in the following language: "The question in this case is whether or not a decree, in a suit by a landowner against a drainage district, adjudicating that the owner had paid the full limit of benefits accruing to his land, and perpetually enjoining the district from collecting any more taxes on it, is *res judicata* in a subsequent suit by the district to collect additional taxes on the land, brought in obedience to an order of the federal court directing the county clerks of three counties 'to extend upon the tax books of their respective counties a tax of 6½ per cent. of the benefits assessed against each tract of land' in the district, to pay a judgment rendered in that court against the district."

We are of the view that the judgment of the Lincoln chancery court in favor of Johnson on October 19, 1931, and that rendered in favor of the other appellants on June 15, 1932, are *res judicata* in the present suit brought by the district against these same parties to collect additional taxes on their lands brought in obedience to an order of the federal court.

In this case the appellee drainage district has sued appellants for drainage taxes alleged to be due from them to the district. These appellants defend upon the ground that they have already paid in full all the tax benefits assessed against their lands and that they have done all that the law requires of them. In support of their position, appellants set up specifically, as *res judicata* of the issues here, the former decrees in 1931 and 1932, *supra*, in the same court from which this appeal

comes, in which the same parties were involved, involving the same taxes, and in which it was adjudicated that they had paid in full the taxes lawfully assessed against them. They insist, and we think correctly so, that these decrees in a suit between the same parties, involving the same issues and the same subject-matter are *res judicata* of the questions involved in the instant case.

As we view it, the power of the federal court to make the mandatory order, which it made, is unquestioned, but the effect of this order was a direction to the commissioners of the drainage district to institute proper proceedings, in the proper state court, to enforce the payment and collection of all delinquent taxes assessed against the property owners in the district as a class, who were delinquent on their assessed benefits. The effect of this federal court order was not to deprive the individual taxpayer and landowner of any right that he might have in the state court to resist collection of the additional tax assessed against his particular lands. Each taxpayer was entitled to be heard not only upon the validity of the tax levied, but also upon the amount of the tax. The mere fact alone that the federal court directed the appellee district to bring the present suit in the state court was a recognition by the federal court of the power of the state court to decide the issues involved. The federal court order directed the county clerks of the counties in which the lands in question in the district were located to extend a tax of 6½ per cent. of the benefits assessed against each tract and directed the appellee district to bring suit for the collection of these taxes. If the clerks erroneously extended such taxes and the district brought the suits to collect nonexistent taxes under a mistaken conception of the scope of the federal court order, the appellants lose no right of defense. They could make the same defenses against such suits as they would have been entitled to make had the commissioners brought the suits without orders from the federal court. It was not the purpose of the federal court to enforce the collection of taxes in this district after they had been paid, nor to exact benefits in excess

of those lawfully assessed against appellant's property. As we view it, the federal court suit, in which the certificate holders secured a judgment against the district, appellee, did not involve the validity of the assessments against the appellant landowners. It simply involved the liability of the district to the holders of the certificates. The federal court correctly held the district liable to the bondholders, but the effect of that holding does not deny to the individual taxpayer the right to resist the collection of the tax in question.

In the present case appellants are not resisting the order of the federal court directing the district to assess and collect a tax. They concede the validity of that order and the duty of the district and its officers to obey it. These district officers have levied the tax and have brought suit to collect it against the property owners in the district, as a class, who have not paid the tax, but not against appellants who have actually paid the tax as shown by the judgment of a state court of acknowledged jurisdiction.

In the case of *State of Arkansas for the use and benefit of Craighead County* v. *St. Louis-San Francisco Railway Company,* 269 U. S. 172; 46 Sup. Ct. 66, 70 L. Ed. 219, the facts were that the Maccabees secured a judgment in the federal court in Craighead county on certain county warrants. In aid of this judgment the Maccabees instituted mandamus proceedings and the federal court made an order directing the taxing officials to assess at full money value all property in Craighead county and to continue said assessment until the judgment of the plaintiff had been paid in full. The assessment was made by the taxing authorities in attempted compliance with the order of the federal court.

Thereafter the State of Arkansas for the use and benefit of Craighead county sued two railroad companies for the collection of the taxes as assessed under the order of the federal court. These companies defended on the ground that the assessment ordered by the federal court was not properly made and, therefore, in violation of the state constitution. The state court sus-

tained their defense and this decision was affirmed by the Supreme Court of the United States in which it held, quoting the headnotes:

"A mandamus issued by the federal district court for the purpose of satisfying a judgment previously entered therein against a county, and commanding tax officials to assess all property in the county at its full value and continue so doing until the judgment shall be paid, but laying down no further details as to the manner of making assessments, is to be taken as requiring that they be made in accordance with the laws of the state, leaving the question whether an assessment, when made, complies with those laws to be determined in appropriate proceedings by that court, or by the state courts.

"Hence where, in purported compliance with such mandamus, the property in the county was assessed at full value for county taxes (out of which the federal court judgment was to be paid) but at one-half its value for state, municipal and school taxes, and the state supreme court, adjudging that the discrepancy was contrary to a uniformity requirement of the state constitution and not in accord with the direction of the federal court, refused to enforce collection of the county taxes for more than 50%—*held,* that the judgment of the state court plainly did not deny the authority or question the validity of the mandamus of the federal court, and was not reviewable in this court under § 237, 28 Jud. Code, p. 176. (28 Jud. Code, p. 176, 344.)"

We think the principles announced in this case are applicable here.

The object of a writ of mandamus or a mandatory injunction is merely to require public officials to perform an existing duty, and courts cannot require them to do more than the law permits them to do. As was said in *United States* v. *County of Macon,* 99 U. S. 582, 582, 25 L. Ed. 331: "We have no power by mandamus to compel a municipal corporation to levy a tax which the law does not authorize. We cannot create new rights or confer new powers. All we can do is to bring existing

powers into operation." And even though the federal court properly rendered the judgment in favor of the certificate-holders against the appellee district and properly ordered the officials of the district to collect a tax upon the property of each citizen therein to pay the judgment, nevertheless this order did not deny to appellants and the individual tax-payer in that district the right to set up any defense against the tax assessment that he might have.

Appellants in the instant case are not attempting to set up a class defense nor one that is common to all the landowners in the district; they are asserting a defense, which is peculiar to themselves alone, based on the decree of the state court which perpetually enjoined the district from collecting any more taxes on these lands. We hold that these decrees are *res judicata*, and we do not think it material in the present case whether these decrees of the state court were right or wrong, there being no allegation of fraud nor want of jurisdiction. No appeals were taken from them. The Supreme Court of the United States in *Jeter* v. *Hewitt*, 22 How. 352, 16 L. Ed. 345, said: "*Res Judicata* renders white that which is black and straight that which is crooked. *Facit excurvo rectum, ex albo nigrum.*" The decrees in these suits rendered in 1931 and 1932, *supra*, could only have been set aside on appeal or by direct action to annul them on the ground of fraud, and as we have said no appeals were taken and no fraud on the court in which decrees were rendered is reflected by this record.

On the whole case we conclude, therefore, that the chancellor erred in holding that the lands of appellants are liable for any additional tax assessments in the appellee district, and the judgment is accordingly reversed with instructions to enter a judgment not inconsistent with this opinion.

SMITH, McHANEY and BAKER, JJ., dissent.

SMITH, J. (dissenting). The majority opinion discovers a new method whereby old debts may be discharged without payment, even in cases where there is no

question of limitations in favor of the debtor, or imputation of laches against the creditor. I, therefore, dissent.

I think it unimportant whether there was collusion in the rendition of the decree which is pleaded as *res adjudicata*. It suffices to say that the majority opinion opens wide the door for such collusion and affords easy opportunity to defeat the collection of substantial parts of an improvement district's obligations.

Of the innumerable improvement districts, of various kinds, which have been organized throughout the state it is doubtful whether in any instance the property owners were required to discharge the betterments assessed against their lands in a single payment. Certainly the rule is to distribute these payments of betterments over a period of years, and when this is done numerous cases have held that interest may be charged upon these betterments. These cases are all to the effect that the interest charge does not operate to increase the betterments, but is a charge made for the indulgence of extension of time in paying the betterments. Among other cases so holding are the following: *Oliver v. Whittaker,* 122 Ark. 291, 183 S. W. 201; *Pfeifer v. Bertig,* 141 Ark. 531, 217 S. W. 791; *Skillern v. White River Levee District,* 139 Ark. 4, 212 S. W. 90; *Massey v. Ark. & Mo. Highway District,* 163 Ark. 63, 259 S. W. 387; *Griffin v. Little Red River Levee District,* 157 Ark. 590, 249 S. W. 16; *Faulkner Drainage District v. Williams,* 169 Ark. 592, 276 S. W. 604; *Chicago Mill & Lbr. Co. v. Drainage District No. 17,* 172 Ark. 1059, 291 S. W. 810.

Act 467 of the General Acts of 1919, p. 343, provides that "Where assessments of benefits have been made in drainage districts organized either under general or special acts, the property owner shall have the right to pay such assessments in full within sixty days after the passage of this act, but if he does not avail himself of this privilege, the assessment of benefit shall bear interest at the rate of six (6%) per cent. per annum, and shall be payable only in installments as levied. The interest need not be computed until necessary to be sure that the

collections have not exceeded the total amount of benefits and interest; or the interest may be first collected.''

The circumstance that the statute making the benefits bear interest was passed after the district was organized, and the benefits assessed is not of controlling importance. The decisions of the United States Circuit Court of Appeals of this circuit in the cases cited in the majority opinion involved the very taxes here sought to be collected.

That the statute above quoted is applicable to the instant case very clearly appears from the opinion of this court in the case of *Benton* v. *Nowlin*, 187 Ark. 738, 62 S. W. 2d 16. The theory upon which interest may be collected on deferred payments of installments of betterments was so thoroughly considered by the late Justice BUTLER in the case just cited that it would be a work of supererogation to pursue the question further.

Most—if not all—of the improvements constructed in this state, under our various improvement district statutes, have been paid for by the issuance of certificates of indebtedness or of bonds, the maturities of which are so distributed that they may be paid with the annual collection of installments of betterments.

Now, it may or may not be necessary to collect interest on these betterments; but the right to do so is unquestioned. The collection of this interest may be required to pay the district's obligations; but the majority opinion permits that right to be defeated. It is only required that the commissioners permit themselves to be sued, and for the showing to be made that property owners have paid their original assessments without paying the interest thereon. The commissioners of the districts, who are usually large property owners, are under the temptation to make no defense, as they profit, along with other property owners, in being relieved of proportionate liability for interest, and this relief may be awarded under the majority opinion, although the real parties in interest may be in profound ignorance of the suit until the right of appeal has been lost. This is the effect of the majority opinion, and I am constrained to dissent, and am

authorized to say that Justices McHaney and Baker concur in the views here expressed.