## KERSH LAKE DRAINAGE DISTRICT ET AL. v. JOHNSON.

No. 595. Argued March 8, 1940.—Decided March 25, 1940.

486

*Messrs. George B. Rose* and *George Rose Smith* for petitioners.

*Mr. Walter G. Riddick,* with whom *Mr. Charles T. Coleman* was on the brief, for respondent.

MR. JUSTICE BLACK delivered the opinion of the Court.

Kersh Lake Drainage District was organized, in 1912, under the general drainage law of Arkansas.[1]   An assessment of the value of benefits to accrue to each of the tracts of land embraced in the District was duly made, upon the basis of which annual levies were extended against each tract.   And the District issued interest bearing certificates of indebtedness in payment of construction work done for it by contract.

Respondent Johnson, a landowner in the District, brought suit against the District and its Commissioners in the Lincoln Chancery Court of the State of Arkansas in order to establish that he had fully paid the share of benefit taxes apportioned to his land and was therefore entitled under Arkansas law to have his land declared free from any further drainage tax liability.   In 1931, that state court rendered its final decree to the effect that the lien of the District for such taxes had already been "fully satisfied and released," and enjoined further extension of drainage taxes against his lands.   In 1932, the same state court rendered a like decree in favor of W. A. Fish and other named landowners of the District.

---

[1] Acts of Ark. 1909, p. 829.

November 1, 1935, a judgment against the District was obtained by certificate holders in the federal court for the Eastern District of Arkansas. The Circuit Court of Appeals affirmed.[2] To enforce their judgment, these creditors then instituted proceedings in the same Federal District Court, for mandatory injunction to require the appropriate county clerks to extend drainage benefit taxes for the District upon their tax books; to require county officials to collect these taxes; and to provide that "if any property owners fail to pay their drainage tax the defendant, Kersh Lake Drainage District, and its Commissioners be required to institute suit for the collection of the delinquent taxes, and to prosecute the same with due diligence to a conclusion, and to see that the delinquent lands are sold promptly under the decrees of foreclosure, . . ." Answering, the District set up among other defenses that "a large number of tracts of land in the District have fully paid the entire value of assessed benefits against said lands and that said property owners obtained a decree in the Lincoln Chancery Court in the case of W. A. Fish, et al. v. Kersh Lake Drainage District on June 15, 1932, enjoining and restraining the Commissioners of the defendant District from levying or extending any tax against those lands, the assessed benefits of which have been fully paid."

The District Court decreed that a mandatory injunction issue compelling the "County Clerks and County Collectors to perform their duties in the collection of the drainage taxes upon the lands in suit"; that there be extended taxes "of six and one-half per cent of the benefits assessed against each tract of land . . . until the whole of this decree has been satisfied"; that the "Commissioners . . . be required to institute suits for the collection of all delinquent taxes of said District, and to prosecute the same with due diligence to a conclusion, . . ."; and

---

[2] 85 F. 2d 643.

that "the said Commissioners are deemed receivers of this court . . ." And the Circuit Court of Appeals affirmed.[3]

Pursuant to this mandatory injunction, the drainage taxes were extended on the tax books but respondent Johnson and other landowners in whose favor the decrees of the Lincoln Chancery Court had been rendered, refused to pay. Suit for collection was filed against their lands in the Lincoln Chancery Court by the Commissioners. In reliance upon the 1931 and 1932 State Chancery Court decrees as final determinations that the assessments apportioned to their respective tracts of lands had been discharged, pleas of *res judicata* were interposed by the landowners. Referring to this answer of the landowners, the Commissioners amended their complaint and alleged (1) that the state court decrees of 1931 and 1932 were void because certificate holders had not been made parties, and (2) that the certificate holders' judgment against the District and the mandatory injunction decree of the federal court were *"res judicata* of all the questions . . . raised by the" landowners. The trial court decided against the landowners, but the Supreme Court of Arkansas reversed and held that the unappealed Chancery Court decrees in 1931 and 1932 amounted to conclusive adjudications that the particular lands here involved were responsible for no further benefit taxes, thus sustaining the landowners' pleas of *res judicata*.[4]

*First. The unappealed 1931 and 1932 Decrees of the Lincoln Chancery Court of the State of Arkansas.*

As stated by the Supreme Court of Arkansas, the general jurisdiction of the Lincoln Chancery Court, under the state law, to render the 1931 and 1932 decrees is "acknowledged,"[5] and this determination by the state's highest court is binding upon us. However, petitioners' argu-

---

[3] 92 F. 2d 783.

[4] 198 Ark. 743; 131 S. W. 2d 620; 132 S. W. 2d 658.

[5] Cf. *Protho* v. *Williams,* 147 Ark. 535, 547; 229 S. W. 38.

ment is that these decrees were void because certificate holders were not made parties in and had no notice of the Chancery proceedings. Therefore, they contend that in giving effect to the state court decrees and treating them as *res judicata* in the present proceeding the court below deprived certificate holders of their property without due process of law in violation of the Fourteenth Amendment.[6]   Petitioners also add the contention that the 1932 state court decree was "collusive as a matter of law."

Although the Drainage District was not in terms legislatively declared to be a corporation, its powers and limitations were similar to those of corporations and its Commissioners were comparable to corporate directors.[7] Among the duties of the Commissioners—as provided by the very statute upon which the certificates involved here rest—were those of protecting and enforcing creditors' rights on obligations issued by the District.[8]   And the Commissioners in 1931 and 1932 litigated with the landowners the disputed question of proportionate amounts of taxes due the District by virtue of drainage benefits received by the particular tracts here in question.

---

[6] Because of this and the further contention that the Supreme Court of Arkansas had denied full faith and credit to the judgments of the Federal District Court, certiorari was granted.

[7] See, e. g., reference to "the board of directors," Acts of Ark. 1909, p. 849.

[8] The Act of 1909 set up detailed standards for creation and control of the District; provided for management of District affairs by a Board of Commissioners under outlined supervision by Arkansas courts; and intrusted the Commissioners with the conduct and control of litigation for the collection and enforcement of unpaid benefits against lands in the District. Such litigation was required to be conducted in the State Chancery Court having jurisdiction in the County where the particular lands were located; and the lands covered by the 1931–1932 Lincoln Chancery Court decrees were located in Lincoln County. Arkansas Acts 1909, p. 829.

When these certificates were issued, purchasers were charged with notice of and bound by Arkansas statutes in existence when, and pursuant to which, the debt was contracted and which provided for determination of the proportionate liabilities of lands in the District by Chancery proceedings between the Commissioners and landowners with no requirement of notice to creditors of the District.[9] Thus, the very statutory plan from which the certificate obligations sprang contemplated that the Commissioners should represent the collective and corporate interests of the District, in litigation between the District and a landowner involving matters personal to the landowner.

These certificate holders were not entitled to be made parties in the Lincoln Chancery proceedings, just as in practice creditors of a corporation are not, unless otherwise provided by statute, made parties in a suit between a stockholder and the corporation to determine liability on a stock subscription, between the corporation and a third person to recover corporate assets, or in a suit brought against the corporation by creditors, stockholders or officers. It has been held that bondholders are not necessary parties to and are bound by the decree—even if adverse to their interests—in litigation wherein an indenture trustee under a bond issue is a party and exercises in good faith and without neglect his contractual authority to represent and assert the lien securing the issue.[10] And so are these petitioners bound by the decrees in the Chancery suit in which the Commissioners as parties appropriately asserted the lien for benefit of certificate holders—unless there was fraud or collusion.

[9] *Rees* v. *City of Watertown*, 19 Wall. 107, 120; *United States* v. *County of Macon*, 99 U. S. 582, 590.

[10] *Elwell* v. *Fosdick*, 134 U. S. 500, 512, 513; *Richter* v. *Jerome*, 123 U. S. 233, 246-7.

It is sufficient to state as to this contention that the issues of fraud and collusion raise no questions which the Supreme Court of Arkansas was not competent finally to decide. And the Supreme Court of Arkansas points out that under controlling Arkansas law the Chancery decrees "could only have been set aside on appeal or by direct action to annul them on the ground of fraud, and as we have said no appeals were taken, and no fraud on the court in which the decrees were rendered, is reflected by this record." [11]

But petitioners nevertheless insist that the state court's chancery decrees cannot avail the landowners because of the subsequent judgments of the Federal District Court.

*Second. The Judgments of the Federal District Court.*

Petitioners pleaded the final judgments of the Federal District Court as conclusive adjudications of the issues raised by the landowners' defense based upon the Chancery decrees. The refusal of the court below to accept the District Court's judgments as determinative of the individual landowners' liabilities constituted, petitioners claim, a denial of full faith and credit to those federal judgments. With this contention we do not agree.

In order that the District might be afforded a basis for suits in the state courts to recover taxes with which to pay the judgment against it, the District Court ordered a mandatory injunction requiring county officials to extend on their books drainage taxes against all the lands in the District as a whole, including those here involved. This preliminary to state court suits in which the actual respective liabilities of the individual landowners could be determined was performed, and thereby this provision of the injunction was carried out. The Commissioners were also enjoined to file and prosecute suits in the state

---

[11] 198 Ark. 743, 753; 131 S. W. 2d 620, 625; 132 S. W. 2d 658.

courts to collect all such taxes that were delinquent. This was done. Irrespective of whether the District was empowered to represent the landowners when the extension of taxes as a whole was ordered, by its mandatory injunction the District Court did not attempt to foreclose the state court from hearing all matters of personal defense which individual landowners might plead in the suits for collection. Instead, the District Court appropriately left for the state court's determination any such personal defenses available under Arkansas law.[12] And here the Supreme Court of Arkansas has sustained as personal defenses the decrees of payment and discharge obtained by individual landowners in Arkansas courts of competent jurisdiction. Accordingly, petitioners misconstrue entirely the decree of the District Court in arguing that unless its injunction is carried out without any reference to the prior state court decrees, injunctions by a state court will be permitted to obstruct the execution of a federal court's judgment.[13] In view of our construction of the mandatory injunction and the fact that its mandates have been fully carried out, it is unnecessary for us to consider the existence or present vitality of the doctrine said to be established by the cases relied upon by petitioners.[14]

The substantial effect of the District Court's judgments was no more than a determination that a total balance was still due the complaining certificate holders by the District; that drainage taxes sufficient to discharge this

---

[12] Cf. *Arkansas* v. *St. Louis-San Francisco Ry. Co.*, 269 U. S. 172, 176; *Chandler* v. *Peketz*, 297 U. S. 609, 611.

[13] Petitioners rely upon *Riggs* v. *Johnson County*, 6 Wall. 166; *United States* v. *Council of Keokuk, Id.*, 514; *The Mayor* v. *Lord*, 9 Wall. 409; *The Supervisors* v. *Durant, Id.*, 415; *Hawley* v. *Fairbanks*, 108 U. S. 543.

[14] But see *Erie R. Co.* v. *Tompkins*, 304 U. S. 64, 78 and *Ruhlin* v. *New York Life Ins. Co., Id.*, 202, 205.

balance should be extended on the proper county tax books in accordance with Arkansas law; and that suits against individual landowners be filed for judicial ascertainment of their proportionate shares of the total. Neither the adjudication of the total liability nor the order for extension of drainage taxes on the local tax books was an adjudication of the varying proportionate liabilities of the respective landowners. Determination of these liabilities was properly left for the state court. A decreed total liability for the District was still consistent with the principle that "when the proportion [taxable against a particular tract] is ascertained and paid, it is no longer or further liable. It is discharged. The residue of the tax is to be obtained from other sources." [15]

These landowners were neither served with process nor heard in either the certificate holders' suit against the District or the mandatory injunction proceeding. No relief against them as individuals was either sought or adjudged. The Commissioners did represent all landowners in unsuccessfully defending the certificate holders' suit for an adjudication of the total collective corporate obligation of the District as an entity. In the present suit the landowners have not asserted, and the Supreme Court of Arkansas has not upheld, any attack upon that judgment, which might be valid although uncollectible against the District or any individual landowners. [16] The fact that the Commissioners, in the injunction proceedings against the District, unsuccessfully attempted to interpose defenses peculiar and personal to the individual landowners cannot foreclose the individual landowners, who were not present, from thereafter pleading a defense otherwise valid. Certainly, the decree in the injunction suit in the federal court would not prevent an individual property owner from subsequently interposing the de-

---

[15] *Rees* v. *City of Watertown, supra,* 119–20.

[16] *Barkley* v. *Levee Commission,* 93 U. S. 258, 265–6.

fense that his property was not in fact included within the Drainage District.[17]   Cognate personal defenses, such as the one that a landowner's proportionate drainage tax liability has been declared by the judgment of a competent tribunal to have been "ascertained and paid," were not foreclosed by the Federal District Court's judgments.

The judgments of the federal court were not denied full faith and credit by the Supreme Court of Arkansas.

*Affirmed.*

Mr. Justice McReynolds took no part in the decision of this case.

---

[17] *Ocean Beach Heights, Inc.* v. *Brown-Crummer Investment Co.*, 302 U. S. 614.   Cf. *Normandy Beach Dev. Co.* v. *United States*, 69 F. 2d 105.