REAL ESTATE EXCHANGE CORPORATION *v.* MUSKEGON COUNTY DRAIN COMMISSIONER.

1. JUDGMENT—UNITED STATES COURT—DRAINS—PERSONAL DEFENSE BY LANDOWNERS.

While mandatory order of Federal court directing taxing authority to levy, spread, collect and enforce taxes originally assessed by drain commissioner against land in drainage district sufficient to pay amount of. judgment in favor of bondholders did not preclude interposition of personal defenses by individual landowners not parties to Federal case, assertion that under previous State decrees their lands could not be assessed for construction of a sewer unlawfully constructed is not a personal defense open to such landowners since it involves the validity of the tax (Act No. 316, Pub. Acts 1923, as last amended by Act No. 331, Pub. Acts 1927).

2. SAME—COLLATERAL ATTACK.

That a judgment may be erroneous does not alone subject it to collateral attack.

3. SAME—RES JUDICATA—MISTAKE OF LAW—WANT OF JURISDICTION.

While a judgment is conclusive as to all the *media concludendi* and cannot be impeached either in or out of the State by showing that it was based upon a mistake of law, a want of jurisdiction over either the person or the subject matter might be shown.

4. SAME—PROCEDURAL IRREGULARITIES—COLLATERAL ATTACK.

While errors or procedural irregularities are subject to correction by the court itself or upon appeal, they do not warrant a collateral attack upon the judgment.

5. SAME—UNITED STATES COURT—COLLATERAL ATTACK—DRAINS.

A judgment of a Federal court which had jurisdiction of cause of action by bondholders of a drainage district against the district and the county in which it was located precludes the discussion, in a suit by landowners in the district against the taxing authorities to enjoin the levy of the tax ordered by the Federal court, of the questions raised in Federal court as to whether the bondholders had been represented by the county drain commissioner in previous cases in the State circuit court and therefore were bound by decrees of the State court in such previous cases or whether the drainage district was abolished by such decrees as such are claimed errors in the Federal judgment or whether the Federal mandate enjoined relief decreed by the State decrees contrary to Federal statute relative to injunctions by Federal courts to stay proceedings in a State court or divested the landowners of their vested rights, as such latter two claims relate to the erroneous exercise of the Federal court's power to issue mandamus and not to its jurisdiction (36 Stat. at L. 1162).

6. SAME—SATISFACTION—UNITED STATES COURT—MANDAMUS.

A Federal district court has authority to issue writs of mandamus to procure satisfaction of its judgments.

7. SAME—DRAINAGE DISTRICT—TAX LEVY TO SATISFY JUDGMENT.

A Federal district court which had jurisdiction to, and did, render a judgment against a drainage district in favor of bondholders had jurisdiction to compel the assessing officers to levy a tax for the purpose of securing satisfaction of its judgment.

8. SAME—UNITED STATES COURTS—MANDAMUS—INTERFERENCE BY STATE COURTS.

The authority of a Federal court to mandamus in aid of its judgment is not affected by a prior State injunction against the same parties affected by the mandamus as the Federal and State courts are independent courts and neither can interfere with the process or proceedings of the other.

9. SAME—UNITED STATES COURT—FULL FAITH AND CREDIT.

A State court must accord full faith and credit to a valid judgment of a Federal court and a mandatory order in aid of satisfaction thereof from which no appeal had been taken

since they are then final and, pursuant to Federal statute, are to have the same dignity in the courts of a State as those of its own courts in a like case and under similar circumstances (U. S. Const. art. 4, § 1; U. S. Rev. Stat. § 905).

10. Drains—Landowners—Bondholders—Judgment of United States Court.

While landowners in a drainage district against which bondholders had prevailed in an action in Federal court were not served with process nor heard therein nor in mandamus proceedings to compel satisfaction of the judgment rendered, they are bound by the Federal judgment to the same extent as the district is, as the district necessarily represented the taxpayers in the Federal case (Const. 1908, art. 8, § 15a; Act No. 316, chap. 10, § 15, Pub. Acts 1923, as last amended by Act No. 331, Pub. Acts 1927).

11. Judgment—Res Judicata—United States Courts—Drainage District—Landowners.

Judgment of Federal court against drainage district in favor of bondholders, upholding the validity of tax upon landowners within drainage district, and, in effect, holding for nought the prior chancery decrees and injunctions of a State court was binding upon taxpayers within the district who sought, in turn, to hold the Federal judgment void, where no appeal was taken from such Federal judgment and claims here urged were also presented and adjudicated there.

12. Courts—United States Courts—Mandamus in Aid of Judgment.

A State court is powerless to prevent the carrying into effect of mandatory order of Federal court compelling levy of taxes on lands in a drainage district, made in aid of judgment it had rendered against such district in a case in which it had jurisdiction of the parties and subject matter.

Boyles, C. J., and Bushnell and Butzel, JJ., dissenting.

Appeal from Muskegon; Brown (William B.), J., presiding. Submitted October 9, 1942. (Docket No. 73, Calendar No. 42,150.) Decided April 6, 1943. Rehearing denied June 7, 1943.

Bill by Real Estate Exchange Corporation and Glenside Building Corporation, Michigan corporations, against John Harte, Muskegon County Drain

Commissioner, and others to enjoin levy and collection of drain taxes, and for other relief. Decree for plaintiffs. Defendants appeal. Reversed.

*Warner, Norcross & Judd, Conrad E. Thornquist,* and *Arthur W. Penny,* for plaintiffs.

*Morton L. Wolfe, Alexis J. Rogoski, Edward C. Farmer,* and *Charles A. Larnard,* for defendants.

SHARPE, J. This case arises because defendants, taxing authorities, pursuant to a mandatory order of the United States district court for the western district of Michigan, have proceeded to assess and tax certain property owned by the plaintiffs and located within the so-called Ruddiman Valley No. 3 drainage district *contra* to a prior injunction of the circuit court of Muskegon county.

It appears that, in 1929, proceedings were had under the general drain laws then in effect (Act No. 316, Pub. Acts 1923, as amended by Act No. 365, Pub. Acts 1925, and Act No. 331, Pub. Acts 1927 *) for the establishment of an alleged drainage district to be known as Ruddiman Valley drainage district No. 3, and the construction of an alleged drain. The drainage district embraced certain lands within Norton and Muskegon townships and the city of Muskegon. An assessment of benefits was made against the property within the district and the drainage district issued bonds in anticipation of the collection of drain taxes levied for the payment of the cost of constructing the Ruddiman Valley No. 3 drain. Construction of the alleged drain proceeded.

In 1932 the township of Norton and others brought suit in the circuit court of Muskegon county, in chancery, against the drain commissioner, the

---

* See, as later amended, 1 Comp. Laws 1929, § 4838 *et seq.* (Stat. Ann. § 11.1 *et seq.*).—REPORTER.

county treasurer, and the county of Muskegon to set aside and declare void all proceedings and actions taken relative to the "survey, location, establishment and construction of the so-called Ruddiman number three drain, and all apportionments and assessments made thereon;" and perpetually to enjoin and restrain the county treasurer from collecting any of the assessments. The court held that the construction was not a drain but was in fact and law a sewer and entered a decree granting plaintiffs relief. The case was appealed by plaintiffs on their right to recover assessments paid before the validity of the proceedings was determined and is reported in *Township of Norton* v. *Cockerill,* 265 Mich. 405.

Later the Bankers Trust Company of Muskegon and others, owners of land within the district and predecessors in title of plaintiffs herein, filed a bill of complaint in the circuit court of Muskegon county asking relief similar to that asked by Norton township in the above-mentioned case.

After hearing, the court found:

"That the Ruddiman Valley No. 3 drain as designated and constructed was in fact a tile sewer, and not a drain within the meaning of the general drain laws as same existed at the time of the laying out of said drainage district and the construction of said drain."

And entered the following decree:

"1. That all proceedings so as aforesaid had relative to the survey, location, establishment, and construction of the so-called Ruddiman Valley No. 3 drain be and they are hereby declared to be null and void and of no effect as against the plaintiffs to this suit, or any of them.

"2. That all assessments and instalments of assessments against the lands of the plaintiffs to this

suit for the construction of said Ruddiman Valley No. 3 drain be and they are hereby cancelled, set aside, and held for naught, and the apparent lien of all such assessments against said lands is vacated, set aside, and held for naught.

"3. That the defendant Ernest R. Cockerill, as drain commissioner of Muskegon county, and the defendant William H. Wilson, as treasurer of said county, and their and each of their successors in office, and the defendant county of Muskegon, be and they are hereby perpetually enjoined and restrained from collecting or in any manner attempting to collect from the plaintiffs or by any proceedings against said land any of the assessments so as aforesaid levied incident to the construction of said Ruddiman Valley No. 3 drain."

No appeal was taken from this decree.

In December, 1938, the bondholders brought an action in the United States district court for the western district of Michigan against the Ruddiman Valley No. 3 drain district and the county of Muskegon upon the bonds. They alleged that the drain commissioner "(after proceedings lawfully taken pursuant to Act No. 316, Pub. Acts 1923, as amended by Act No. 365, Pub. Acts 1925, and by Act No. 331, Pub. Acts 1927), issued in behalf of defendant Ruddiman Valley No. 3 drain district * * *, $75,000 * * * par value of bonds, * * * said bonds being issued in anticipation of the collection of drain taxes levied for the payment of the cost of constructing the Ruddiman Valley No. 3 drain."

Defendant county answered and denied that the bonds were issued after proceedings "lawfully taken" and denied that the drainage district was established pursuant to the laws of Michigan. It averred that the illegality of the establishment of the drainage district was adjudicated by the circuit court of the county of Muskegon in the *Norton Township Case,* mentioned above. Defendant county

also set forth a summary of the drain proceedings in support of its averment that the commissioner was without jurisdiction or authority to make his order of determination of the drainage district and had no jurisdiction to assess the land for the benefit of a sewer.

In March, 1939, plaintiffs, bondholders, were given a judgment of approximately $75,000 against the Ruddiman Valley No. 3 drainage district. It also provided that the liability of the county of Muskegon was secondary to that of the drainage district. No appeal was taken from this judgment. The county of Muskegon paid the judgment and on October 16, 1939, took an assignment of the same from the bondholders.

In September, 1939, the United States district court issued an order in the nature of a writ of mandamus compelling the taxing authorities to levy, spread, collect and enforce taxes originally assessed by the drain commissioner against land in the Ruddiman Valley No. 3 drainage district sufficient to pay the amount of the judgment. The drain commissioner proceeded to obey the mandate of the Federal court. He prepared and certified an assessment roll for the drainage district in which he apportioned and levied taxes, according to the apportionment of the costs of the drain as fixed in the original proceedings for the drain, against the several parcels of land embraced in the drainage district; and the taxing authorities have spread said taxes.

Plaintiffs as owners of land in the alleged drainage district filed the bill of complaint now before us against the taxing authorities claiming that all matters set forth in the above-mentioned decrees of the circuit court of Muskegon county are adjudicated; that the taxes about to be assessed are unlawful and deprive plaintiffs of vested rights without due proc-

ess of law in violation of the State and Federal Constitutions; * and asked the following relief:

"That the defendants, their agents, servants, successors in office, attorneys and employees, be forever restrained and enjoined * * * from levying, assessing, spreading, demanding or taking any steps to collect from the plaintiffs herein, or by any proceeding against the lands above-described, any taxes incident to the construction of the so-called Ruddiman Valley No. 3 drain.

"3. That a decree be entered in the above-entitled matter, decreeing:

"(a) That the attempted levy, assessment, spread and collection of taxes against the property of the plaintiffs above-described in connection with the construction of the alleged Ruddiman Valley drain No. 3 is a deprivation of plaintiffs' vested rights in property without due process of law, and a violation of plaintiffs' constitutional rights.

"(b) That all proceedings had by any of the defendants hereto in connection with the levy, assessment and spread of taxes in connection with the so-called Ruddiman Valley drainage district No. 3 on the above-described lands belonging to the plaintiffs be declared null and void and of no effect.

"(c) That the above-described lands are free and forever clear of any liability for taxes heretofore, now, or hereafter levied, assessed and spread on account of the construction of the so-called Ruddiman Valley drainage district No. 3."

After hearing, the trial court entered a decree that the establishment, creation and completion of the drainage district and all proceedings taken therein are set aside and decreed null and void; and that all proceedings connected with the levy, assessment, spread and collection of taxes for construction of the drain are null and void; and discharged the lien upon the property. It also held that the writ

---

* Mich. Const. 1908, art. 2, § 16; U. S. Const., Am. 14, § 1.—RE-PORTER.

of mandamus issued by the United States district court is "null, void and inoperative."

All defendants, except the Norton township supervisor, appeal and contend among other things that the State court decrees relied upon by plaintiffs as a basis for relief have been superseded by the judgment and writ of mandamus issued by the district court of the United States; and that the circuit judge was without authority to decree null, void and inoperative the writ of mandamus issued by the United States district court.

Plaintiffs argue that the Federal court judgment was a money judgment only against the drainage district and county; that so far as plaintiffs are concerned there is no conflict between the State court injunctions and the Federal mandamus; that plaintiffs were not parties to the Federal judgment nor represented by the officers of the drainage district so that the Federal court judgment or mandate did not foreclose personal defenses which they as individual landowners might plead in proceedings for collection of taxes; and that they are in the same position as the landowners in *Johnson* v. *Kersh Lake Drainage District,* 198 Ark. 743 (131 S. W. [2d] 620, 132 S. W. [2d] 658), affirmed by the United States Supreme Court in *Kersh Lake Drainage District* v. *Johnson,* 309 U. S. 485 (60 Sup. Ct. 640, 84 L. Ed. 881, 128 A. L. R. 386).

In the *Kersh Lake Drainage District Case, supra,* certain landowners within a drainage district recovered a decree in the State court to the effect that the lien of the district for drainage taxes had already been "fully satisfied and released," and enjoined further extension of drainage taxes against their lands. Certificate holders later recovered a judgment in the Federal district court against the drainage district. The district court ordered a mandatory injunction requiring county officials to ex-

tend on their books drainage taxes against all lands in the district and enjoining them to file and prosecute *suits in the State court* to collect all such taxes that were delinquent. This was done. In an appeal from a suit to collect delinquent taxes against landowners in a State court, the supreme court of Arkansas sustained as personal defenses the decree of payment and discharge obtained by the individual landowners in the Arkansas courts of competent jurisdiction prior to the Federal mandamus.

Upon review by the United States supreme court, that court held that the mandatory injunction left to the State court's determination any personal defenses available under Arkansas law; it also held that ''cognate personal defenses, such as the one that a landowner's proportionate drainage tax liability has been declared by the judgment of a competent tribunal to have been 'ascertained and paid,' '' were not foreclosed by the Federal district court's judgment. In reaching this conclusion, the court said (p. 494):

''These landowners were neither served with process nor heard in either the certificate holders' suit against the district or the mandatory injunction proceeding. No relief against them as individuals was either sought or adjudged. The commissioners did represent all landowners in unsuccessfully defending the certificate holders' suit for an adjudication of the total collective corporate obligation of the district as an entity. In the present suit the landowners have not asserted, and the supreme court of Arkansas has not upheld, any attack upon that judgment, which might be valid although uncollectible against the district or any individual landowners. * * * Certainly, the decree in the injunction suit in the Federal court would not prevent an individual property owner from subsequently interposing the defense that his property was not in fact included within the drainage district.''

Plaintiffs claim as personal defenses that by former State decrees their lands could not be taxed for the sewer unlawfully constructed; that the Ruddiman Valley drainage district No. 3 had been vacated by the State decrees prior to the Federal mandate, consequently their lands are within the drainage area, but not within the drainage district; and that the taxing of plaintiffs' property in 1941 for such unlawful purposes, in view of the former State decrees, constitutes the taking of their property, or vested rights therein, without due process of law.

These are not personal or individual claims, they are in effect class defenses involving the validity of the tax, and they in effect resist the Federal court's order directing the taxing officials to tax. They are not personal defenses within the holding of *Kersh Lake Drainage District* v. *Johnson, supra,* nor are they claims that defendants have mistaken the scope of the Federal order and acted in noncompliance with the order. See *Arkansas* v. *St. Louis-San Francisco R. Co.,* 269 U. S. 172 (46 Sup. Ct. 66, 70 L. Ed. 219).

Plaintiffs further claim that the Federal judgment and mandate are void and open to collateral attack upon the following grounds: that the State decrees having vacated the drainage district and the bondholders having been represented by the drain commissioner in such suits and parties to the State decrees, such decrees were *res judicata* of the matters here in controversy; that the Federal mandate enjoined the decrees of a State court contrary to the Federal statute (36 Stat. at L. 1162, chap. 231, § 265 [28 USCA, § 379]); and that the Federal mandate constituted a taking of plaintiffs' property without due process of law.

It is apparent that there is a conflict between the effect of the mandamus issued out of the Federal

court and the prior injunctions issued out of the State court. Nor is the Federal judgment in harmony with *Bloomfield Village Drain Dist.* v. *Keefe* (C. C. A.), 119 Fed. (2d) 157, decided by the United States circuit court of appeals after the Federal judgment involved here. Although the Federal judgment before us may be erroneous, it is not for this reason alone subject to collateral attack.

"A judgment is conclusive as to all the *media concludendi, United States* v. *California & Oregon Land Co.,* 192 U. S. 355 (24 Sup. Ct. 266, 48 L. Ed. 476); and it needs no authority to show that it cannot be impeached either in or out of the State by showing that it was based upon a mistake of law. Of course a want of jurisdiction over either the person or the subject matter might be shown. *Andrews* v. *Andrews,* 188 U. S. 14 (23 Sup. Ct. 237, 47 L. Ed. 366); *Clarke* v. *Clarke,* 178 U. S. 186 (20 Sup. Ct. 873, 44 L. Ed. 1028)." *Fauntleroy* v. *Lum,* 210 U. S. 230, 237 (28 Sup. Ct. 641, 643, 52 L. Ed. 1039).

"Errors or procedural irregularities, if any, were subject to correction by the court itself or upon appeal, but afforded no warrant for collateral attack upon the order." *Chandler* v. *Peketz,* 297 U. S. 609 (56 Sup. Ct. 602, 80 L. Ed. 881).

See, also, *Marin* v. *Augedahl,* 247 U. S. 142 (38 Sup. Ct. 452, 62 L. Ed. 1038).

The Federal district court had jurisdiction of the parties and of the cause of action by the bondholders against the drainage district and the county of Muskegon.

"Bondholders have the right to select the jurisdiction as between the State and Federal courts." *Bloomfield Village Drain Dist.* v. *Keefe, supra,* p. 162.

Therefore, as we view the case, it is not within our province in this case to consider whether in the prior

State cases the bondholders were represented by the drain commissioner and bound by the State chancery decrees, or whether the drainage district was abolished by those decrees as these are claimed errors in the Federal judgment.

Nor do we think it necessary to determine whether the Federal mandate enjoined relief decreed by the State decrees contrary to 28 USCA, § 379, or divested the plaintiffs of their vested rights as these claims relate to the erroneous exercise of the Federal court's power to issue mandamus and not to that court's jurisdiction.

It is well settled that the Federal district court has *authority* to issue writs of mandamus to procure satisfaction of its judgments.

"The district court undoubtedly had jurisdiction to compel the assessing officers of the county to levy a tax for the purpose of securing satisfaction of its judgment. *Memphis* v. *Brown,* 97 U. S. 300 (24 L. Ed. 924); *United States* v. *Fort Scott,* 99 U. S. 152 (25 L. Ed. 348). For that purpose it had jurisdiction to determine what form of assessment would accord with the laws and the Constitution of the State of Arkansas and to prescribe the manner in which the assessments should be levied. *Riggs* v. *Johnson County,* 6 Wall. (73 U. S.) 166 (18 L. Ed. 768); *Prout* v. *Starr,* 188 U. S. 537 (23 Sup. Ct. 398, 47 L. Ed. 584)." *Arkansas* v. *St. Louis-San Francisco R. Co., supra.*

See, also, *Hawley* v. *Fairbanks,* 108 U. S. 543 (2 Sup. Ct. 846, 27 L. Ed. 820).

And this authority of a Federal court to mandamus in aid of its judgments is not affected by a prior State injunction against the same parties affected by the mandamus.

In *Supervisors* v. *Durant,* 9 Wall. (76 U. S.) 415, 418 (19 L. Ed. 732), the court said:

"That such an injunction (State) was wholly inoperative to prevent the circuit court of the United States from enforcing its judgment by mandamus to the defendants to compel them to levy the tax which the law authorized and required, is no longer to be doubted. Its invalidity to work such an effect has been placed beyond question by the rulings of this court in the cases already cited. In *Riggs* v. *Johnson County* (6 Wall. [73 U. S.] 166 [18 L. Ed. 768]) where it appeared that an injunction had been obtained, in one of the State courts, upon the county commissioners, enjoining them against levying any tax to pay certain municipal bonds and coupons, a mandamus was nevertheless sustained to compel the levy of a tax, at the suit of one who had obtained judgment in the circuit court for some of the coupons. That case is full authority for the doctrine that an injunction of a State court cannot control, or in any manner affect the action, the process, or the proceeding of a circuit court, not because the latter has any paramount jurisdiction over State courts, but because the tribunals are independent of each other. It is true that in *Riggs* v. *Johnson County* it appeared the relator in the information, or suggestion for the mandamus, was not a party to the injunction suit, while the relator here was a party defendant. That, however, can make no difference. The present relator, though made a party with the other defendants, was not enjoined. The decree upon the bill for an injunction was exclusively against the board of supervisors of Washington, at the suit of others than the relator. And had he been enjoined, it is not easy to see how that fact could have limited the power of the circuit court. We have already remarked that the true reason why the injunction was not a bar to the mandamus is,

that the district court of the State and the circuit court are independent courts, and that neither can interfere with the process or proceedings of the other. ·It would hardly be contended that a State court can enjoin a defendant against paying a judgment which has been, or may thereafter be recovered in a circuit court of the United States. If it may, Federal jurisdiction is a myth. It is at the mercy of State tribunals. * * * Certainly the circuit courts of the United States are as exempt from State control by State courts, as are the district courts of the State from control by each other.

"It is of course immaterial whether the injunction of the district court of Washington county was before or after the judgment obtained by the relator in the circuit court of the United States, or whether before or after the institution of suit. It is not a question which court first obtained possession of the case."

See, also, *Mayor* v. *Lord,* 9 Wall. (76 U. S.) 409, 414 (19 L. Ed. 704); *Amy* v. *Supervisors,* 11 Wall. (78 U. S.) 136 (20 L. Ed. 101); *Kersh Lake Drainage District* v. *Johnson, supra.*

No appeal having been taken from either the judgment or mandamus proceedings, they are final valid orders of the Federal court which this court is bound to accord full faith and credit.*

The rule as to the faith and credit to be given by · a State court to Federal judgments and decrees is stated in *Stoll* v. *Gottlieb,* 305 U. S. · 165, 170 (59 Sup. Ct. 134, 136, 83 L. Ed. 104), where the court said:

"The Congress enacted, as one of the earlier statutes, provisions for giving effect to the judicial proceedings of the courts. This has long had its present form (Rev. Stat. § 905 [28 USCA, § 687]). This statute is broader than the authority granted by Article 4, § 1, of the Constitution to prescribe the

---

* See U. S. Const., art. 4, § 1.—REPORTER.

manner of proof and the effect of the judicial proceedings of States. Under it the judgments and decrees of the Federal courts in a State are declared to have the same dignity in the courts of that State as those of its own courts in a like case and under similar circumstances. (*Dupasseur* v. *Rochereau*, 21 Wall. [88 U. S.] 130 [22 L. Ed. 588]; *Embry* v. *Palmer*, 107 U. S. 3, 9 [2 Sup. Ct. 25, 30, 27 L. Ed. 346]; *cf. Metcalf* v. *Watertown*, 153 U. S. 671 [14 Sup. Ct. 947, 38 L. Ed. 861])."

And in *Crescent City Live Stock Co.* v. *Butchers' Union Slaughter-House Co.*, 120 U. S. 141, 147 (7 Sup. Ct. 472, 475, 30 L. Ed. 614), the court said:

"It may be conceded, then, that the judgments and decrees of the circuit court of the United States, sitting in a particular State, in the courts of that State, are to be accorded such effect, and such effect only, as would be accorded in similar circumstances to the judgments and decrees of a State tribunal of equal authority."

See, also, *Pittsburgh, C., C., & St. L. Ry.* v. *Long Island Loan & Trust Co.*, 172 U. S. 493 (19 Sup. Ct. 238, 43 L. Ed. 528); *Hancock National Bank* v. *Farnum*, 176 U. S. 640 (20 Sup. Ct. 506, 44 L. Ed. 619).

Plaintiffs herein (taxpayers) were neither served with process nor heard in either the bondholders' action nor the mandamus proceedings and no personal decrees against them were either sought or adjudged. Plaintiffs do not urge that the drainage district did not represent them in the Federal litigation, nor can such a claim be made. A drainage district is empowered to issue bonds for drainage purposes. Const. 1908, art. 8, § 15a. And Act No. 316, chap. 10, § 15, Pub. Acts 1923, as last amended by Act No. 331, Pub. Acts 1927, provides:

"In cases where the commissioner determines that the taxes assessed for benefits received shall be

collected in more than one instalment, said commissioner * * * may borrow money in anticipation of the collection of such instalments and may issue as evidence thereof the bonds of the drainage district as hereinbefore defined. Such obligations shall specify on their face that they are payable out of the instalments of drain taxes to be thereafter collected. * * * The commissioner shall prescribe the form of the bond * * * and shall therein pledge the credit of the drainage district, including the lands embraced within such district * * * in the proportion that they are taxed for the benefits received thereby."

It necessarily follows that the district represented the taxpayers in the Federal litigation and plaintiffs are bound by the Federal judgment to the same extent as the district is bound.

See, also, *Holt County* v. *National Life Ins. Co.*, 25 C. C. A. 469 (80 Fed. 686); *Ashton* v. *City of Rochester,* 133 N. Y. 187 (30 N. E. 965, 31 N. E. 334, 28 Am. St. Rep. 619); *Caldwell* v. *Guardian Trust Co.* (C. C. A.), 26 Fed. (2d) 218.

All claims made in the case before us by the taxpayers that the entire drain proceedings were void were made in the bondholders' case. The court there having determined that such claims did not constitute a meritorious defense and no appeal having been taken therefrom, the plaintiffs here are bound by that judgment. The effect of the Federal court judgment was to hold for nought the prior chancery decrees and injunctions as well as foreclose the taxpayers from questioning the validity of the tax. The mandamus order simply provided for execution of the judgment by requiring public officials to carry out their duties as prescribed by statute. This the Federal court had the power to do and we are powerless to prevent.

The decree of the trial court is vacated. An order will be entered in the circuit court dismissing plain-

tiffs' bill of complaint.    Defendants may recover costs.

Chandler, North, Starr, and Wiest, JJ., concurred with Sharpe, J.

Bushnell, J. (*dissenting*).    I cannot concur in the opinion proposed by Mr. Justice Sharpe.    The circuit court of Muskegon county held that the proceedings and action taken relative to the construction of the Ruddiman Valley No. 3 drain were void and that court perpetually enjoined and restrained the county treasurer (a defendant herein) from collecting any of the drain assessments.    No appeal was taken from this decree.

Later, this court in *Township of Norton v. Cockerill,* 265 Mich. 405, divided on the question of the right to recover those illegal assessments which had been paid, but that division was over the applicability of a statute of limitation, *i.e.,* 1 Comp. Laws 1929, § 4927 (Stat. Ann. § 11.91).    Nevertheless, this court was unanimously of the opinion that—

"The undisputed facts show that the construction was not a drain but was in fact and law a sewer."

The bondholders' proceedings upon which appellants rely were brought in the United States district court for the western district of Michigan subsequent to the entry of the foregoing unappealed circuit court decree, and our decision in *Township of Norton v. Cockerill, supra.*    The judgment of the Federal court in the bondholders' proceedings could have no effect whatever on the prior chancery decree and injunction of the State court.    See the reasoning in *Toucey v. New York Life Ins. Co.,* 314 U. S. 118 (62 Sup. Ct. 139, 86 L. Ed. 100, 137 A. L. R. 967).

However, we are not presently concerned with the correctness of the judgment which the Federal court rendered in the bondholders' action on March 15, 1939, and the writ of mandamus issued on September 21, 1939 (see *Erie R. Co.* v. *Tompkins,* 304 U. S. 64 [58 Sup. Ct. 817, 82 L. Ed. 1188, 114 A. L. R. 1487], decided April 25, 1938), but rather with the right of the successors in title of one who secured a decree on November 27, 1934, in the State court, perpetually enjoining and restraining the collection of an illegal drain tax upon its lands.

As to plaintiffs in the case at bar, and those appellants who either themselves or their predecessors in office were defendants in the former action in the Muskegon circuit court, that decree is *res judicata.* As to the remaining defendants, the former unappealed decree is just as effective because it made it illegal to levy and collect a tax incident to the construction of the drain in question.

Under the rules of *res judicata* and *stare decisis* the instant decree of the circuit court should be affirmed. *City of Highland Park* v. *Oakland County Drain Commissioner,* 300 Mich. 501. It should be so ordered, with costs to appellees.

BOYLES, C. J. (*dissenting*). I am convinced that the decree should be affirmed. The county of Muskegon, the county treasurer and the county drain commissioner as such, all were parties in the cases heretofore decided by the circuit court for Muskegon county and by this court, in which this entire drain proceeding was decreed to be a nullity. The county of Muskegon, the county treasurer and the county drain commissioner, as such, appeared as parties in the proceeding before the United States district court for the western district of Michigan, and are likewise parties in the case now before us. The judgment entered in the United States district

court provided that the liability of the county of Muskegon was secondary to that of the drainage district. Notwithstanding the former adjudications, and without exhausting its remedy of appeal from that judgment, the county of Muskegon paid the judgment and took an assignment from the plaintiff bondholders therein. The county of Muskegon in that manner now attempts to stand in the shoes of the plaintiff bondholders, and to reimburse itself for the judgment thus paid, by assessing and collecting taxes against the landowners of a so-called drainage district, where there is no such drainage district in existence. Some of these landowners now seek the intervention of the State courts to prevent this unlawful attempt. These landowners against whose lands taxes are to be levied were not parties in the United States district court case. It would be a far stretch of the class representation theory were we to hold that the appearance of the drain commissioner in the United States district court case made these landowners parties therein. They are not foreclosed from denying the legality or the existence of any drainage district. This is a personal defense open to plaintiffs, and so held in *Johnson* v. *Kersh Lake Drainage District,* 198 Ark. 743 (131 S. W. [2d] 620, 132 S. W. [2d] 658), affirmed by the United States supreme court in *Kersh Lake Drainage District* v. *Johnson,* 309 U. S. 485 (60 Sup. Ct. 640, 84 L. Ed. 881, 128 A. L. R. 386).

In conformity with our previous decrees, we must leave the county of Muskegon in the situation it placed itself when it paid the judgment and took over from the plaintiff bondholders the burden of collecting from the landowners. The decree should be affirmed, with costs to plaintiffs-appellees.

BUTZEL, J., concurred with BOYLES, C. J.