**In re James F. KREMPA, Debtor.**

**James F. Krempa, Plaintiff,**

v.

**Beth A. Westerbeek, Defendant.**

**Bankruptcy No. HM 05–90449.
Adversary No. 05–99031.**

United States Bankruptcy Court,
W.D. Michigan.

Jan. 29, 2007.

8

Donald W. Bays, Esq., Marquette, MI, for Plaintiff.

F. Gregory Murphy, Esq., Marquette, MI, for Defendant.

## OPINION

JEFFREY R. HUGHES, Bankruptcy Judge.

On May 25, 2005, James F. Krempa ("Debtor") filed a petition for relief under Chapter 7 of the Bankruptcy Code.[1] Shortly thereafter Debtor commenced this adversary proceeding against his former wife, Beth A. Westerbeek. Debtor seeks a declaration from the court that his obligation under a prior divorce judgment to make what the parties have characterized as "Section 71(b)" payments is subject to the discharge provided to debtors seeking relief under Chapter 7 of the Bankruptcy Code. *See,* 11 U.S.C. § 727(a).[2] Such a declaration is permitted under FED. R.BANKR.P. 4007(a).[3]

---

**1.** Debtor's petition pre-dates the October 17, 2005 effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub.L. No. 109–8, § 1501(B)(1), 119 Stat. 23. Unless otherwise indicated, all citations in this opinion to the Bankruptcy Code will be to the Bankruptcy Code as written prior to the BAPCPA amendments. In addition, all references to "Section _____" are to the appropriate sections of the pre-BAPCPA Bankruptcy Code unless otherwise indicated.

**2.** Debtor had not received his Chapter 7 discharge when he commenced this adversary proceeding. However, the court later granted a discharge on September 28, 2005.

**3.** The adversary proceeding is unusual because it is the Debtor, and not Ms. Westerbeek, who is seeking relief regarding the

On April 2, 2005, Ms. Westerbeek filed a motion for summary judgment. Although I denied the motion, the motion did have the salutary effect of crystallizing the many issues raised in this challenging case. Moreover, it prompted a framework within which to adjudicate these issues in an orderly fashion.

The issues identified by the parties and the court as dispositive are:

(1) Whether a post-petition order issued by a state court violated the automatic stay;

(2) Whether a pre-petition order issued by the same state court collaterally estopped Debtor;

(3) Whether the Section 71 payments under the divorce judgment and attendant settlement agreement were alimony; and

(4) Whether the Section 71 payments are reasonable in the event they are determined to be in the nature of alimony.

The parties also agreed that the first three issues could be tried based upon only the submission of specific documents, to wit: (1) the July 31, 2002 settlement between Debtor and Ms. Westerbeek concerning their divorce; (2) the August 2, 2002 judgment of divorce entered by the Oakland County Circuit Court; (3) the May 4, 2005

order entered by the Oakland County Circuit Court; and (4) the June 22, 2005 order entered by the Oakland County Circuit Court.[4] Finally, the parties agreed that trial of the fourth issue, that being whether the Section 71 payments are reasonable, should be deferred because additional proofs, including testimony, would be required to resolve that issue and because the court's disposition of the other issues could render this fourth issue moot.

The first three issues were "tried" on June 27, 2006 simply by the parties' offering oral argument as to their respective positions. The parties also submitted briefs prior to the June 27, 2006 hearing. I took the matter under advisement at the conclusion of the hearing. This opinion constitutes findings of fact and conclusions of law. FED.R.BANKR.P. 7052.

### FINDING OF FACTS

Debtor and Ms. Westerbeek were divorced in August of 2002. The July 31, 2002 settlement agreement is a 23 page document that sets forth in great detail what were to be the terms of their divorce. However, the August 2, 2002 judgment of divorce does suggest that issues remained unresolved at the time the judgment was entered. This suggestion arises from the

---

dischargeability of the debt in question. Moreover, the declaration sought by Debtor is with respect to only the alimony exception under Section 523(a)(5). What Debtor has not requested is a similar declaration with respect to whether the Section 71 payments are dischargeable notwithstanding Section 523(a)(15).

(a) A discharge under Section 727 ... of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(15) not of the kind described in paragraph (5) [i.e., a non-support obligation] that is incurred by the debtor in the course of a divorce or separation. ...

11 U.S.C. § 523(a)(15).

Similarly, Ms. Westerbeek has not sought a declaration of non-dischargeability under Section 523(a)(15) either by way of counterclaim in this adversary proceeding or by separate complaint. Therefore, the issue of whether the Section 71 obligation is or is not subject to the Section 523(a)(15) exception to discharge is not addressed in this opinion.

4. All four documents were included in the Index of Exhibits that Ms. Westerbeek submitted on April 6, 2006. These documents have been marked as Exhibits 1 through 4 and are hereby admitted for purposes of the final disposition of these three issues.

fact that the word "consent" is scratched from the caption of the judgment and it appears that Ms. Westerbeek's attorney countersigned that order as to form only. However, neither party has offered any explanation as to why the judgment may have been contested or whether there is a substantive discrepancy between the August 2, 2002 judgment and the July 31, 2002 settlement agreement that preceded it. Therefore, I have assumed that whatever discrepancy, if any, there is between the two documents is irrelevant for purposes of the issues before me.

The judgment of divorce includes provisions for alimony, child support, the division of property, and the repayment of various credit card accounts and other third party obligations. There is then a separate provision entitled "SECTION 71 PAYMENTS." It reads as follows:

31. As additional property settlement, Defendant [i.e., Debtor] shall pay to Plaintiff [i.e., Ms. Westerbeek] IRC Section 71 payments payable in cash, without interest, in the following amounts and for the following times:

a. In the amount of Two Thousand Five Hundred ($2,500.00) Dollars per month commencing on the first day of August, 2002, and continuing on the first day of each successive month thereafter until and including July 1, 2007, a period of sixty (60) consecutive months.

b. In the amount of Four Thousand ($4,000.00) Dollars per month commencing on the first day of August, 2007, and continuing on the first day of each successive month thereafter until and including July 1, 2012, a period of sixty (60) consecutive months; and

c. In the amount of Five Thousand ($5,000.00) Dollars per month commencing on the first day of August, 2012, and continuing on the first day of each successive month thereafter until and including July 1, 2017, a period of Sixty (60) consecutive months.

Defendant's obligation to make these payments shall terminate absolutely upon Plaintiff's death, and for no other reason. If Plaintiff dies prior to the completion of all of the payments, Defendant shall be under no obligation to make any payment (in cash or property) in substitution for the terminated payments. If Plaintiff's death occurs, her Personal Representative and/or estate shall notify Defendant immediately. These payments are not subject to modification for any reason whatsoever. This Judgment prohibiting modification includes any request for an increase or decrease in the term or amounts. The payments shall not bear interest. These payments are an absolute obligation, except upon Plaintiff's death, which would terminate Defendant's requirement to make these payments. The payments are not dischargeable by Defendant in the event of his personal bankruptcy.

Ex. 4, 8/2/02 Judgment of Divorce, p. 9.

Debtor honored his obligation to make the Section 71 payments for several years. However, he defaulted in late 2004. That default prompted Ms. Westerbeek to file a motion with the Oakland County Circuit Court to hold Debtor in contempt. The court thereupon issued its May 4, 2005 order. The recitals in that order indicated that the parties had reached an agreement "with respect to the current arrearage" and that the terms of the agreement had been placed on the court's records. However, neither of the parties has included a transcript of that hearing as part of this record.

Ms. Westerbeek's attorney prepared the May 4, 2005 order. It identifies an arrear-

age owing by Debtor in the amount of $17,500 and it provides for Debtor's repayment of the same over a period of several months. The order further identifies the arrearage as being related to past due "spousal support."

The May 4, 2005 order also includes signature lines for Debtor's attorney and Ms. Westerbeek's attorney with the statement "Approved as to form and content. Notice of entry waived[ ]" typewritten immediately above those signature lines. However, the attested copy of the May 4, 2005 order offered as an exhibit does not include a signature by either attorney.

Debtor did not cure the arrearage as required in the May 4, 2005 order. Rather, Debtor filed his petition for Chapter 7 bankruptcy relief on May 25, 2005. Debtor's failure to comply with the May 4, 2005 order prompted Ms. Westerbeek to schedule another hearing before the Oakland County Circuit Court. That hearing resulted in a second order being entered by that court on June 22, 2005. The body of that handwritten order reads as follows:

The Plaintiff [Ms. Westerbeek] filed a show cause seeking to enforce the payment of amounts labeled as Section 71(b) payments, contending that same are spousal support. The parties stipulated to the entry of the May 4, 2005 order. The Defendant [Debtor] filed a petition in the Bankruptcy Court. The Plaintiff asked the court to enforce the payments due her contending the automatic stay did not apply to these payments. The Defendant stated that he believed that the payments were property settlement payments, not spousal support. The court asked the parties to file briefs in support of their respective positions. The court has reviewed the briefs.

It is hereby ordered that for the reasons stated in Plaintiff's brief and the statements of the court placed on the record that the payments labeled as Section 71 payments are spousal support payments and not property settlement payments.

It is further ordered that the court will proceed with the show cause on a date to be selected by counsel and the court.

Ex. 1, 6/22/05 Order.

It is unclear who drafted the June 22, 2005 order. However, unlike the May 4, 2005 order, the June 22, 2005 order is countersigned by both attorneys albeit the approvals are as to form only.

It is also unclear whether the June 22, 2005 order was issued in reference to Debtor's ongoing default under the August 2, 2002 divorce judgment or in reference to Debtor's default of the May 4, 2005 order concerning the cure of the arrearage. The June 22, 2005 order itself suggests that the court was addressing Ms. Westerbeek's ongoing contention that Debtor should be held in contempt for violating the terms of the August 2, 2002 divorce judgment. Again, it was this same contention that resulted in the court's issuance of the prior May 4, 2005 order.

## CONCLUSIONS OF LAW

### Alimony or Property Settlement

Debtor's Section 71 obligation set forth in the August 2, 2002 divorce judgment derives its name from Section 71 of the Internal Revenue Code. 26 U.S.C. § 71. That section provides that alimony and separate maintenance payments received by a party in conjunction with a divorce or separation agreement are to be treated as income by the recipient. Subsection (b) of Section 71 then defines alimony as any payment of cash if:

(A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,

(B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215.

(C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and

(D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

*Id.*

There is no dispute that the payments to be made to Ms. Westerbeek under the Section 71 Payments section of the August 2, 2002 divorce judgment meet this definition. Moreover, the parties agree that Ms. Westerbeek has duly reported whatever Section 71 payments she has received from Debtor as income for purposes of her federal tax returns.

Ms. Westerbeek seizes upon these facts as proof positive that Debtor's continuing obligation under the divorce judgment to make these Section 71 payments constitutes alimony for purposes of determining dischargeability under Section 523 of the Bankruptcy Code as well. However, aspects of the August 2, 2002 divorce judgment and the attendant July 31, 2002 settlement suggest the contrary.

First, the language in both the divorce judgment and the settlement agreement

establishing Ms. Westerbeek's right to receive the Section 71 payments refers to the obligation created as "an additional property settlement." Second, and equally important, is the fact that both the divorce judgment and the attendant settlement agreement include separate provisions for alimony. Granted, the judgment and the settlement agreement also include separate provisions regarding the allocation of their property. However, these separate property provisions actually support Debtor's argument that the Section 71 payments were intended to be part of the parties' overall property settlement, for the existence of other provisions addressing the settlement of property issues would be necessary in order to give meaning to the parties' reference to the Section 71 obligation as an "additional property settlement."

I also question whether the Internal Revenue Code's recognition of these payments as alimony should be even given any weight at all. At best, it is only one of many indicia that might be reflective of the parties' intent.[5] Moreover, its probative effect is compromised by the fact that tax avoidance appears to be as much a motivation as anything else for the parties' inclusion of such a provision in their settlement. Indeed, the parties' characterization of the Section 71 obligation as an additional property settlement strongly suggests that they simply reshaped what otherwise would have been part of the main property settlement so that both parties could take advantage of the apparently disparate tax brackets of Debtor and Ms. Westerbeek.

■ I had previously concluded in denying Ms. Westerbeek's motion for summary judgment that neither the August 2, 2002

---

5. In a recent case, the Supreme Court has cautioned against interpreting the Bankruptcy Code with definitions borrowed from other federal statutes that were enacted without bankruptcy in mind. *Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.,* —— U.S. ——, 126 S.Ct. 2105, 2113, 165 L.Ed.2d 110 (2006).

divorce judgment nor the attendant July 31, 2002 settlement could definitively establish whether the parties intended the Section 71 obligation to be alimony or part of the property settlement. However, after further reflection, I am inclined to conclude that there is no ambiguity and that the documents themselves establish this obligation as part of the property settlement. In any event, the matter that is before me relates to the dischargeability of a debt under Section 523(a) and therefore the burden of proof lies with Ms. Westerbeek notwithstanding the fact that it is Debtor who is seeking the declaration. *Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103, 1111 (6th Cir.1983) (spouse's burden to establish non-dischargeability). Consequently, I must find in favor of Debtor and against Ms. Westerbeek on this issue even if there is an ambiguity because Ms. Westerbeek, by agreement, has chosen not to introduce extrinsic evidence to resolve that ambiguity.[6] Therefore, for the reasons stated, I determine that the parties intended the Section 71 payments required under the August 2, 2002 divorce judgment and the attendant settlement agreement to be part of the overall property arrangement reached between them as opposed to additional alimony to be paid by Debtor to Ms. Westerbeek.

### Collateral Estoppel and the May 4, 2005 Order

Ms. Westerbeek contends that Debtor is nonetheless collaterally estopped from now denying that the Section 71 obligation is alimony because the May 4, 2005 order previously entered by the Oakland County Circuit Court had already determined that obligation to be spousal support. That order states in pertinent part as follows:

IT IS HEREBY ORDERED that:

1. The Defendant [*i.e.*, Debtor] acknowledges that, as of April 22, 2005, the arrearages in spousal support owed the Plaintiff [*i.e.*, Defendant] amounts to $17,500.00.

\* \* \* \* \* \*

Ex. 2, 5/4/05 Order.

 As a preliminary matter, Debtor argues, without citation, that the issue raised by Ms. Westerbeek is actually governed by the doctrine of res judicata, not collateral estoppel. Debtor is mistaken. Res judicata, which is also referred to as claims preclusion, is applied to prevent a party from litigating the same claim a second time. *See, e.g.*, *In re Kalita*, 202 B.R. 889, 893 (Bankr.W.D.Mich.1996). Obviously, res judicata is inapplicable in this instance because the matter at issue here relates to non-dischargeability of a claim under bankruptcy law whereas the matter giving rise to the May 4, 2005 order involved the enforcement of a divorce judgment.

 On the other hand, collateral estoppel, which is also referred to as issue preclusion, prevents parties from re-litigating an issue even though that issue is being raised in the context of a different claim. *Id.* It is well settled in this circuit

---

6. This court's second pretrial order, which reflects the parties' agreement, indicates that only the divorce judgment and the attendant settlement are to be considered with respect to this issue. I have not, though, totally ignored the May 4, 2005 order and the reference therein to Debtor's purported acknowledgment that the arrearages are related to spousal support. However, as already discussed, the May 4, 2005 order was not countersigned by Debtor's attorney and Debtor otherwise denies that he agreed to the inclusion of the acknowledgment in that order. Therefore, while the order may be relevant to Ms. Westerbeek's collateral estoppel argument, it cannot be treated as an admission by Debtor. Moreover, professions in May of 2005 of what was intended with respect to documents prepared nearly three years before have little, if any, evidentiary value.

that the doctrine of collateral estoppel may be applied in a Section 523(a) non-dischargeability action to preclude either party to that action from arguing an issue already litigated in a prior state court proceeding between those same parties. *Bay Area Factors v. Calvert (In re Calvert)*, 105 F.3d 315 (6th Cir.1996). Whether collateral estoppel in fact bars a federal court from considering an issue already adjudicated in a state court depends upon the extent to which the pertinent state's own laws regarding collateral estoppel apply. If a subsequent court in that state would be compelled to preclude an issue because of the prior state court judgment, then 28 U.S.C. § 1738 mandates that a federal court recognize the same preclusive effect of that judgment with respect to issues arising in a non dischargeability proceeding before it. *Id.*

■ Ms. Westerbeek accurately sets forth in her brief the elements required to apply collateral estoppel in Michigan.

(1) "a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment"; (2) "the same parties must have had a full [and fair] opportunity to litigate the issue"; and (3) "there must be mutuality of estoppel."

*Monat v. State Farm Ins. Co.*, 469 Mich. 679, 682–684, 677 N.W.2d 843 (2004) (quoting from *Storey v. Meijer, Inc.*, 431 Mich. 368, 373 n. 3, 429 N.W.2d 169 (1988)).

■ It also would appear that Ms. Westerbeek has established the second and third elements. However, she clearly has not met the first element. First, it is debatable whether the May 4, 2005 order meets the criteria of a "final judgment." Remember, the May 4, 2005 order arose not in its own right but rather as a result of Ms. Westerbeek's effort to enforce a previous judgment, that being the August 2, 2002 judgment of divorce. The finality of the order is also cast into doubt by the state court's subsequent June 22, 2005 order, for that order indicates that further proceedings were to be held with respect to the motion that had not only precipitated that order but presumably the May 4, 2005 order as well.

Second, Ms. Westerbeek has not shown that the entry of the May 4, 2005 order depended upon the state court's determination that the Section 71 payments constituted spousal support. Ms. Westerbeek did not address this crucial element in her trial brief nor do I have the benefit of either the motion that prompted the May 4, 2005 order or whatever else made up the record to support its entry. Consequently, it is difficult to ascertain why the reference to spousal support was included in the May 4, 2005 order. Nevertheless, it would appear that the reference was, as Debtor argues, gratuitous. Whether the Section 71 payments constituted alimony or not was clearly an important question once Debtor filed his petition for relief, for the answer dictated whether the automatic stay applied or not. However, there is nothing in the record to suggest that this issue had any importance to the parties or to the state court when the May 4, 2005 order was entered three weeks prior to that filing. From all appearances, the sole concern of the parties and the court at that time was Debtor's default under the judgment of divorce and the collection of arrearages thereunder.

Therefore, for the reasons stated, I conclude that the "spousal support" language in the May 4, 2005 order does not collaterally estop Debtor from asserting in this adversary proceeding that the Section 71 payments required in the August 2, 2002 judgment of divorce and the attendant settlement agreement do not constitute alimony or other spousal support for purposes

of determining non-dischargeability under Section 523(a)(5).

### The Automatic Stay and the June 22, 2005 Order

 The June 22, 2005 order that Ms. Westerbeek also procured from the Oakland County Circuit Court does not suffer from the same deficiency as the May 4, 2005 order. That is, the parties clearly put to the state court at that time the question of whether the Section 71 payments were spousal support or part of the property settlement. Consequently, Ms. Westerbeek's argument concerning the preclusive effect of the June 22, 2005 order is much stronger.

However, the question addressed by that court was not about enforcement of the August 2, 2002 judgment of divorce *per se;* rather, the question raised was whether Ms. Westerbeek's continued effort in the Oakland County Circuit Court to enforce the Section 71 payments under that judgment violated the automatic stay imposed by the Debtor's filing of his bankruptcy petition on May 25, 2005. Ms. Westerbeek argued, and the Oakland County Circuit Court agreed, that enforcement of this obligation was not in violation of the automatic stay notwithstanding Section 362(a)(2) [7] because of the exception provided under Section 362(b)(2)(B).

> (b) The filing of a petition under Section 301, ... does not operate as a stay—
>
> (2) under subsection (a) of this section

(B) of the collection of alimony, maintenance, or support from property that is not property of the estate.[8]

Debtor, however, challenges the Oakland County Circuit Court's jurisdiction to make that determination. He contends that that court had no authority to decide what was clearly a matter of bankruptcy law. Therefore, Debtor argues that the June 22, 2005 order can have no preclusive effect.

The Sixth Circuit in *Chao v. Hospital Staffing Services, Inc.,* 270 F.3d 374 (6th Cir.2001), had the occasion to discuss the vexing jurisdictional issues raised when bankruptcy laws and other laws collide. *Hospital Staffing* involved the U.S. Department of Labor's effort to enforce wage obligations owed by an employer under what has become known as the "hot goods" doctrine. The Secretary of Labor had successfully secured an injunction from the United States District Court for the Western District of Tennessee that prohibited the removal of billing records of Hospital Staffing Services ("HSS"), which were located at HSS's Memphis, Tennessee headquarters, until the subject wages were paid. That decision was then appealed to the Sixth Circuit.

What made the issue before the Sixth Circuit unusual was the fact that the appellant was a Chapter 7 trustee. HSS had been in the business of providing healthcare services in various states, including Tennessee. However, HSS's attempt to reorganize in a Chapter 11 proceeding was unsuccessful. Consequently, HSS converted to a Chapter 7 case and a trustee was

7.
> ... [A] petition filed under Section 301, ... operates as a stay, applicable to all entities, of—
> * * * * * *
> (2) the enforcement, against the debtor or against property of the estate, of a judg-

ment obtained before the commencement of the case under this title;
11 U.S.C. § 362(a)(2).

8. 11 U.S.C. § 362(b)(2)(B) (pre-BAPCPA).

appointed. The HSS bankruptcy trustee thereafter reached a settlement with the secured creditor regarding the allocation of proceeds realized from the collection of accounts receivable. The HSS bankruptcy trustee needed the billing records to consummate that settlement. The injunction was imposed because of the Secretary of Labor's contention that these records were the work product of employees whose wages remained unpaid.[9]

The HSS bankruptcy trustee argued before the Sixth Circuit that the Tennessee district court did not have jurisdiction to impose the injunction that it did because it was in violation of the automatic stay. The Sixth Circuit agreed. It first determined that the billing records constituted property of the estate and that therefore the records were protected by the automatic stay. *Id.* at 382–384. The Sixth Circuit then determined that the Secretary of Labor's effort to enforce the "hot goods" doctrine was not within the police power exception of Section 362(b)(4). *Id.* at 386–395.

However, what is pertinent in *Hospital Staffing Services* for purposes of the case at hand is that the Sixth Circuit itself did not demur from exercising its authority to decide the substantive issue raised on appeal. Remember, the HSS bankruptcy had been filed in the Southern District of Florida, which is in the Eleventh Circuit, not the Sixth Circuit. Therefore, the Sixth Circuit would not have addressed the hot goods issue as it related to the police power exception to the automatic stay had it accepted the HSS bankruptcy trustee's jurisdictional argument. Rather, it would have reversed the Tennessee district court's decision simply on the basis that the Florida bankruptcy court, and not it, had the exclusive authority to decide that issue.

Therefore, *Hospital Staffing Services* does seem to support Ms. Westerbeek's argument that a court other than a bankruptcy court has jurisdiction to decide issues related to the automatic stay. However, *Hospital Staffing Services* is not directly on point because it addresses the question of whether another federal court has concurrent jurisdiction to decide an automatic stay issue whereas the instant case involves the question of whether a state court may exercise concurrent jurisdiction. Indeed, an excerpt from *Hospital Staffing Services* suggests that a state court's decision regarding the applicability of the automatic stay will be of no consequence if a bankruptcy court later reaches the opposite conclusion.

If the non-bankruptcy court's initial jurisdictional determination is erroneous, the parties run the risk that the entire action later will be declared void *ab initio*. *See Schwartz v. United States*, 954 F.2d 569, 570–71 (9th Cir.1992); *NLRB v. Edward Cooper Painting, Inc.*, 804 F.2d 934, 940 (6th Cir.1986). **If a state court and the bankruptcy court reach differing conclusions as to whether the automatic stay bars maintenance of a suit in the non-bankruptcy forum, the bankruptcy forum's resolution has been held determinative, presumably pursuant to the Supremacy Clause.** *See Raymark Indus. v. Lai*, 973 F.2d 1125, 1132 (3d Cir.1992) (bankruptcy

---

**9.** The Chapter 7 trustee had in fact commenced parallel proceedings in the Southern District of Florida to declare the Tennessee proceeding void because it was in violation of the automatic stay. The bankruptcy court for that district had issued a report and recommendation in favor of the Chapter 7 trustee but the district court in that district had yet to act upon that recommendation at the time the Sixth Circuit rendered its opinion in *Hospital Staffing*.

court and state court both held action in state court not barred by the stay, but the Third Circuit reversed the bankruptcy court and remanded with instructions to enter an order vacating the judgment of the state court under an exception to the *Rooker–Feldman* doctrine). Administrative proceedings before a federal agency may likewise be declared void *ab initio* if a court determines that the agency incorrectly determined that the stay did not bar the proceedings. *See, Edward Cooper Painting*, 804 F.2d at 940. We are unaware of a conflict arising between a federal district court and a bankruptcy court, and note that such a conflict would have to be resolved by an appellate court with jurisdiction to hear appeals from both fora.

*Hospital Staffing Services*, 270 F.3d at 384–85 (emphasis added).[10]

The case cited by the Sixth Circuit for this proposition, *Raymark Industries*, is as procedurally complicated as is *Hospital Staffing Services*. *Raymark Industries* involved a product liability claim. The claimant, George Lai, had won a $725,000 judgment against Raymark and Raymark was appealing that judgment to the California Court of Appeals. Raymark had also posted a cash supersedeas bond with the state trial court so as to stay execution pending that appeal.

Raymark was then placed into an involuntary bankruptcy proceeding in the Eastern District of Pennsylvania. Raymark and Mr. Lai thereupon engaged in a number of procedural maneuvers before both the California Court of Appeals and the Pennsylvania bankruptcy court which culminated in Mr. Lai finally executing against the supersedeas bond to collect his judgment. Key to that outcome was the Pennsylvania bankruptcy court's concurrence with the California Court of Appeals' prior determination that the automatic stay did not apply. Raymark appealed this issue to the Third Circuit when the district court affirmed the Pennsylvania bankruptcy court's decision.

Mr. Lai argued on appeal that the bankruptcy court could not have intervened to stay execution against the supersedeas bond even if it had disagreed with the California Court of Appeals' determination that the automatic stay did not apply because of the doctrines of res judicata and collateral estoppel.[11] The Third Circuit rejected this argument. It agreed with Mr. Lai that these doctrines required a federal court to honor a state court's prior decision concerning the same matter or issue regardless of whether the federal court agreed with the decision the state court had reached. However, the Third Circuit also recognized that the prior state

---

10. Ironically, the Sixth Circuit in *Hospital Staffing Services* was actually aware of one "conflict arising between a federal district court and a bankruptcy court" since that was exactly the conflict at issue before it. What the Sixth Circuit did not explain in the latter portion of its opinion was how it reached the conclusion that it had appellate jurisdiction to also consider the Southern District of Florida bankruptcy court's determination that the automatic stay applied. Indeed, it would seem that the only appellate court that would have had jurisdiction to hear appeals from "both fora" would have been the Supreme Court itself.

11. The federal courts' duty to give full faith and credit to state court judgments is based upon statute, not the Constitution. *See,* 28 U.S.C. § 1738. Federal courts are required under that statute to apply principles of res judicata and collateral estoppel in the same manner as would a state court if that state court were asked to preclude either claims or issues based upon a prior judgment entered by another state court in that same jurisdiction. *See also, Bay Area Factors v. Calvert (In re Calvert)*, 105 F.3d 315, 317 (6th Cir.1997) (compiling cases).

court order would itself have no preclusive effect if the state court did not have jurisdiction to enter the order in the first place. Moreover, the Third Circuit determined that the automatic stay could in fact deprive a state court of that jurisdiction. Consequently, it concluded that the automatic stay imposed by *Raymark's* intervening bankruptcy petition dispossessed the California Court of Appeal of the jurisdiction to thereafter permit Mr. Lai's execution against the supersedeas bond.

Here, the bankruptcy court has the power to vacate the decision of the California Court of Appeal dismissing Raymark's appeal because actions taken in violation of the automatic stay are void *ab initio*. *See Kalb v. Feuerstein,* 308 U.S. 433, 438–40, 60 S.Ct. 343, 345–46, 84 L.Ed. 370 (1940); *In re Ward,* 837 F.2d 124, 126 (3d Cir.1988). "Because a void judgment is null and without effect, the vacating of such a judgment is merely a formality and does not intrude upon the notion of mutual respect in federal-state interest." *In re James,* 940 F.2d at 52. Raymark did not ask the bankruptcy court to review the merits of the California proceeding but only to examine its jurisdictional underpinnings in light of the automatic stay.

*Raymark,* 973 F.2d at 1132.

However, *Raymark* should not be read too broadly, for in that case the California Court of Appeals had clearly overstepped its jurisdiction. Raymark's bankruptcy proceeding caused a bankruptcy estate to be created and all of Raymark's property then became the bankruptcy estate's property. Moreover, the automatic stay immediately protected whatever became property of the bankruptcy estate from all acts to enforce a pre-petition judgment against that property. Consequently, the California Court of Appeals could not have decided whether Mr. Lai had violated the automatic stay or not without also deciding at the same time the question of whether the supersedeas bond was property of the estate. However, federal courts, not state courts, are to decide what is to constitute the bankruptcy estate's property.

(e) The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate.

28 U.S.C. § 1334(e) (pre-BAPCPA).[12]

Therefore, the California Court of Appeals had no authority to determine one way or the other whether Mr. Lai's execution against the supersedeas bond violated the automatic stay.

However, in the instant case, the Oakland County Circuit Court was not called upon to decide whether an item of property belonged to the bankruptcy estate or not. Rather, the issue before the Oakland County Circuit Court was whether Debtor's continuing obligation under the August 2, 2002 judgment of divorce to make the Section 71 payments to Ms. Westerbeek constituted alimony and it is clear that that court had at least concurrent jurisdiction to decide that issue.[13] Grant-

---

12. The district courts are in turn authorized by Congress to delegate to the bankruptcy courts the authority to consider matters arising under this jurisdictional grant. 28 U.S.C. § 157. *See also,* W.D. Mich. L.Civ.R. 83.2.

13. The recent Supreme Court decision in *Marshall v. Marshall,* 547 U.S. 293, 126 S.Ct. 1735, 164 L.Ed.2d 480 (2006) raises the question as to whether the "domestic relations" exception that the federal courts have recognized in some instances as precluding jurisdiction would apply in this instance. It is likely that the exception does not apply given the broad jurisdictional scope of 28 U.S.C. § 1334 and the specific references to marital obligations in, for example, Sections 362 and

ed, the matter arose in the context of whether the automatic stay applied or not in connection with Ms. Westerbeek's continued attempts to enforce the terms of a pre-petition judgment of divorce. However, the ultimate issue that the Oakland County Circuit Court needed to decide, that being whether the Section 71 payments required under that judgment constituted spousal support, was well within the jurisdictional competence of that court. Indeed, from a practical point of view, it would make little sense for there to be a "domestic support" exception to the automatic stay under Section 362(b)(2) if the court responsible for imposing the parameters of such support did not have concurrent jurisdiction to decide whether the exception applied in a particular instance.

I am aware of the Sixth Circuit's ruling in *Calhoun* that federal law, not state law, ultimately determines what is alimony and what is a property settlement. *Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103, 1107 (6th Cir.1983). However, the Sixth Circuit made that determination in connection with whether a debt for alimony, maintenance or support was dischargeable under Section 523(a)(5). Such a pronouncement is quite unremarkable given not only that courts have generally recognized that federal law, not state law, dictates whether a debt is dischargeable or not, *see, Grogan v. Garner*, 498 U.S. 279, 283–84, 111 S.Ct. 654, 657–58, 112 L.Ed.2d 755 (1991), but also that Congress itself has declared that the determination of what constitutes alimony, maintenance or support for purposes of Section 523(a)(5) is to be left "to the bankruptcy law, not state laws." S.Rep. No. 95–989, p. 79, U.S.Code Cong. & Admin.News 5787, 5865. *See also,* H.R. No. 95–595, p. 364 (1977),

U.S.Code Cong. & Admin.News 5963, 6320.

However, it does not follow that federal law also controls alimony/property settlement questions when they arise in the context of the automatic stay. The automatic stay and a debtor's discharge are quite different bankruptcy concepts. The automatic stay is, as its name implies, immediate. It is imposed as soon as the debtor's case is commenced and it continues until either modified under Section 362(d) or terminated by operation of Section 362(c). Its purpose is twofold: to protect the bankruptcy estate's property from pre-petition creditors and to protect the debtor from those same creditors so that the debtor can have an opportunity to catch his or her breath and regroup.

On the other hand, a debtor's discharge is not immediate. For example, in a Chapter 7 proceeding, the earliest a debtor will receive a discharge under Section 727 is when the time to object under FED. R.BANKR.P. 4004 has expired and no complaint has been filed. Moreover, the granting of the discharge coincides with the termination of the automatic stay. That is, the debtor ceases to be protected by the automatic stay on the very day the debtor's discharge is granted. 11 U.S.C. § 362(c)(2)(C). It is the discharge injunction imposed by Section 524(a)(2), not the automatic stay of Section 362(c), which thereafter protects the debtor from his or her pre-petition creditors.

One can certainly understand why both Congress and the Sixth Circuit have determined that the bankruptcy court is to have exclusive jurisdiction over the dischargeability of an obligation arising out of a divorce and that the bankruptcy court is to refer to federal law, not state law, when

---

523. In any event, Ms. Westerbeek has never taken the position that only the Oakland County Circuit Court had jurisdiction to de-

cide whether enforcement of the Section 71 obligation fell within the Section 362(b) exception to the automatic stay.

addressing alimony/property settlement questions arising in connection with the dischargeability of claims. How these issues are resolved can have a profound effect upon the "fresh start" a debtor is to receive. Put simply, any issue involving the dischargeability of a particular debt by its very nature goes to the core of bankruptcy law.

However, characteristics of the automatic stay warrant giving concurrent jurisdiction to the bankruptcy court and the state court when, for example, alimony/property settlement questions arise in the context of enforcement of that stay. First, the exception recognized under Section 362(b)(2) for the continued collection of alimony is limited to property that is not property of the estate.[14] Consequently, it is only the debtor himself who stands to lose from a state court's determination that a particular obligation under a judgment of divorce is or is not alimony within the meaning of Section 362(b)(2). Second, a state court's decision that the automatic stay is not applicable with respect to a particular divorce obligation is necessarily short-lived.[15] In other words, a state court's declaration that enforcement of an obligation is not subject to the automatic stay because it is alimony ceases to matter when the debtor's discharge is entered. In most instances, that discharge is granted quite quickly, given that the bankruptcy rules command the court to enter the debtor's discharge "forthwith" as soon as the deadline within which to file objections to discharge has expired. FED.R.BANKR.P. 4004(c).[16]

Therefore, permitting a state court to share concurrent jurisdiction with the bankruptcy court concerning the limited question of whether immediate enforcement of a particular divorce obligation may continue against the debtor does not unduly impinge upon the exclusive jurisdiction Congress envisioned the bankruptcy court otherwise exercising with respect to bankruptcy matters. Indeed, it would appear that the exercise of concurrent jurisdiction with respect to this narrow area is just another compromise by Congress with respect to the competing interests that must be addressed in a bankruptcy proceeding.

In summary, whether the debtor is entitled to forever avoid honoring a particular divorce obligation is a question properly decided by the bankruptcy court based upon its exclusive jurisdiction to decide the dischargeability of that obligation under Section 523(a)(5). However, whether the debtor is able to rely upon the automatic stay to protect him from another court's enforcement of that obligation pending a determination of dischargeability is tem-

---

14.

> (b) The filing of a petition . . . does not operate as a stay—
>
> * * * * * *
>
> (2) under subsection (a) of this section—
>
> * * * * * *
>
> (B) of the collection of alimony, maintenance, or support **from property that is not property of the estate;**

11 U.S.C. § 362(b)(2)(B) (pre-BAPCPA) (emphasis added).

15. Of course, an adverse decision by the state court regarding applicability of the automatic stay could have unwanted consequences in a subsequent non-dischargeability action through the application of collateral estoppel. However, a debtor could in all likelihood avoid even this consequence by simply not contesting the state court proceeding regarding the automatic stay at all and allowing a default to enter instead. *In re Kalita*, 202 B.R. at 907–8.

16. The time within which to object to the debtor's discharge in a Chapter 7 case is 60 days from the date first set for the debtor's meeting of creditors. FED.R.BANKR.P. 4004(a). Rule 2003(a) in turn directs the United States Trustee to set that meeting no later than 40 days after the order for relief is entered in the Chapter 7 case.

pered by the competing need of the ex-spouse to continue receiving payments in the interim. Congress certainly could have precluded state courts from resolving this issue as well. However, both the Section 362(b)(2) exception and the underlying legislative history are silent. Consequently, it is fair to conclude that Congress intended the bankruptcy court to share jurisdiction with the state court on this issue so as to ensure as quick an answer as is possible concerning what is to be the status of such payments pending a final determination of their dischargeability under Section 523(a)(5).

Moreover, recognizing a state court's concurrent jurisdiction to decide this issue does not mean that the debtor is left to that court's mercy. For example, the debtor would always be free to preempt the intervention of the state court by bringing his own motion in the bankruptcy court to declare that the non-filing former spouse is in violation of the automatic stay. In fact, the debtor could even accelerate the application of the Section 524(a) injunction by immediately filing his own complaint with the bankruptcy court to declare the obligation as dischargeable and then requesting preliminary injunctive relief pending the bankruptcy court's final determination of that question.

Therefore, I conclude that in the instant case the Oakland County Circuit Court had concurrent jurisdiction with this court to determine whether Ms. Westerbeek's continued enforcement of the divorce judgment with respect to the Section 71 payments was excepted from the automatic stay because of Section 362(b)(2). Moreover, I do not have the authority to now override that court's prior decision because 28 U.S.C. § 1738 and the doctrine of res judicata combine to prohibit Debtor from collaterally attacking in this forum a decision that the Oakland County Circuit Court was clearly empowered to make.[17]

However, as already explained, the issue before me is not whether the Section 362(a) automatic stay has been violated or not as the result of Ms. Westerbeek's continued enforcement of the divorce judgment in the Oakland County Circuit Court. Rather, the issue is whether the Section 71 obligation under that divorce judgment is excepted from the separate Section 524(a)(2) discharge injunction. In other words, Ms. Westerbeek has overcome the jurisdictional hurdle that prevented Mr. Lai in *Raymark* from even arguing that the California Court of Appeals' decision precluded further consideration of whether he could execute against the supersedeas bond. Again, for the reasons already stated, the Oakland County

17. *Hospital Staffing Services* can be distinguished from the instant case based upon the fact that *Hospital Staffing Services* involved a jurisdictional collision between the federal courts whereas this case involves a bankruptcy court and a state court. However, *Hospital Staffing Services* remains difficult to explain. On the one hand, the Sixth Circuit at least suggests that it is ultimately up to the bankruptcy court, and not the district court exercising concurrent jurisdiction, to determine whether the exception to the automatic stay relied upon applies. That is, the bankruptcy court's subsequent determination that the exception relied upon is inapplicable would void the district court's prior determination to the contrary. Nonetheless, the Sixth Circuit had no compunction whatsoever in reviewing the district court's decision in *Hospital Staffing Services* on the merits notwithstanding the fact that a bankruptcy court in another circuit had already prepared a report and recommendation to the effect that the injunction issued by the district court was void because it violated the automatic stay. Consequently, the Sixth Court was as much sitting in review of the Florida bankruptcy court's decision as it was in review of the Tennessee federal district court's decision.

Circuit Court had jurisdiction to decide whether continued enforcement of the divorce judgment was excepted from the automatic stay and therefore I must give full faith and credit to that determination. However, Ms. Westerbeek must still establish that the Oakland County Circuit Court's decision concerning the automatic stay in fact has any preclusive effect upon the separate § 523(a)(5) issue before me.

Res judicata is clearly not applicable because the matter decided by the Oakland County Circuit Court is not the same as the matter Debtor now asks that I decide. However, I am satisfied that the Oakland County Circuit Court did address an issue necessary for it to arrive at the decision it did that is also necessary for me to decide with respect to the matter that is before me. Therefore, I conclude that Debtor is collaterally estopped from relitigating this issue.

Specifically, Debtor is estopped from now contesting that the Section 71 payments required to be made under the August 2, 2002 judgment of divorce are not in the nature of spousal support. As already discussed, the issue of whether a particular obligation under a divorce judgment is non-dischargeable under the Section 523(a)(5) exception for alimony and other similar obligations is ultimately a question of federal law. However, the Sixth Circuit has instructed that the federal courts must still give considerable deference to state law principles in answering this question.

> Yet, while it is clear that Congress intended that federal not state law should control the determination of when an assumption of joint debts is "in the nature of" alimony or support, it does not necessarily follow that state law must be ignored completely. It is unlikely that Congress could have intended such a result. The underlying obligation to provide support in the first place is necessarily determined by state law. The federal bankruptcy courts are obviously not empowered to create an obligation to support where it did not previously exist. Moreover, there is "no federal law of domestic relations." *De Slyva[Sylva] v. Ballentine*, 351 U.S. 570, 580, 76 S.Ct. 974, 980, 100 L.Ed. 1415 (1956). Divorce, alimony, support and maintenance are issues within the exclusive domain of the state courts. *Boddie v. Connecticut*, 401 U.S. 371, 389, 91 S.Ct. 780, 792, 28 L.Ed.2d 113 (1971) (Black, J., dissenting). We agree, therefore, with the Second Circuit's reasoning in *In re Spong*, 661 F.2d at 9, that Congress could not have intended the bankruptcy courts to ignore well developed state law principles of domestic relations in determining whether a particular loan assumption is "in the nature of" alimony or support for purposes of the bankruptcy act.

*Calhoun*, 715 F.2d at 1107–8.

*Calhoun* reflects this deference by directing the bankruptcy court to first consider whether "the state court or the parties to the divorce *intended* to create an obligation to provide support . . . ." *Id.* at 1109 (emphasis in original). However, *Calhoun* also directs the bankruptcy court to disregard the state court's and the parties' intentions and to find instead that the obligation is dischargeable if the obligation is unnecessary for providing support or if it is excessive in light of the debtor's financial circumstances. *Id.* at 1109–10.

The Sixth Circuit later summarized the process first enunciated in *Calhoun* as follows:

> There is a saying that if something looks like a duck, walks like a duck, and quacks like a duck, then it is probably a duck. In determining whether an award is actually support, the bankruptcy court should first consider whether it "quacks" like support. Specifically, the court

should look to the traditional state law indicia that are consistent with a support obligation. These include, but are not necessarily limited to, (1) a label such as alimony, support, or maintenance in the decree or agreement, (2) a direct payment to the former spouse, as opposed to the assumption of a third-party debt, and (3) payments that are contingent upon such events as death, remarriage, or eligibility for Social Security benefits. An award that is designated as support by the state court and that has the above indicia of a support obligation (along with any others that the state support statute considers) should be conclusively presumed to be a support obligation by the bankruptcy court. A non-debtor spouse who demonstrates that these indicia are present has satisfied his or her burden of proving that the obligation constitutes support within the meaning of § 523, and is thus non-dischargeable. *See Calhoun,* 715 F.2d at 1111 (holding that the non-debtor spouse has the burden of proving non-dischargeability). The burden then shifts to the debtor spouse to demonstrate that although the obligation is of the *type* that may not be discharged in bankruptcy, its *amount* is unreasonable in light of the debtor spouse's financial circumstances.

*Sorah v. Sorah (In re Sorah),* 163 F.3d 397, 401 (6th Cir.1998) (emphasis in original).

I have already given my reasons why, based upon the record before me, I would conclude that the Section 71 payments required of Debtor were intended by the parties to be part of their property settlement as opposed to additional support. However, there is also no question that the Oakland County Circuit Court came to the opposite conclusion when it decided over a year before that the automatic stay did not

bar Ms. Westerbeek's continued efforts to collect those payments. Consequently, 28 U.S.C. § 1738 and the doctrine of collateral estoppel as applied by Michigan courts obligates me to defer to the state court judge's conclusion in this instance. Put simply, there is the requisite identity between what that court decided on June 22, 2005 and what I must now decide as the first prong of the *Calhoun/Sorah* test.

I am also satisfied that the other requirements spelled out by the Michigan Supreme Court in *Monat* as necessary to apply collateral estoppel with respect to this first prong have been met. Debtor clearly had the opportunity to have his position heard with respect to this issue before the Oakland County Circuit Court made its June 22, 2005 determination. There was also "mutuality of estoppel" between the parties since Ms. Westerbeek would have been equally bound in this proceeding regarding that issue had the Oakland County Circuit Court instead determined that the Section 71 payments under the judgment of divorce were not in the nature of support. And finally, I am satisfied that the June 22, 2005 order was sufficiently final for purposes of applying collateral estoppel in this instance. Granted, the order entered did not conclude the proceedings before the Oakland County Circuit Court. Indeed, the June 22, 2005 order itself states that the parties and the court were to select a new hearing date with respect to Ms. Westerbeek's ongoing effort to enforce the August 2, 2002 divorce judgment and its requirement that Debtor make the Section 71 payments.

However, I conclude that the issue decided by the Oakland County Circuit Court on June 22, 2005 was nonetheless a discrete matter that was separate and distinct from the ongoing enforcement proceeding that was pending before it. In comparison, suppose instead that Debtor had

preempted Ms. Westerbeek's effort in state court to proceed with enforcement by filing his own motion to enforce the stay in this court and I too had decided in favor of Ms. Westerbeek. There is no question that the order issued in reference to that decision would be deemed final for purposes of appeal to either the district court or this circuit's bankruptcy appellate panel. *Sun Valley Foods Co. v. Detroit Marine Terminals, Inc. (In re Sun Valley Foods Co.)*, 801 F.2d 186, 190 (6th Cir. 1986) (holding that the bankruptcy court's lifting of the automatic stay is a final decision for purposes of appellate review under 28 U.S.C. § 158). Moreover, there is no question that the Oakland County Circuit Court would have been bound by my determination had Debtor subsequently attempted to litigate the issue again before that court in connection with Ms. Westerbeek's continuing enforcement efforts there. *Real Estate Exch. Corp. v. Harte*, 304 Mich. 596, 610–11, 8 N.W.2d 652 (1943). Consequently, it stands to reason that I must also respect the Oakland County Circuit Court's jurisdictionally valid order regarding the applicability of the automatic stay notwithstanding the fact that it rendered that decision in the midst of the ongoing divorce proceeding between Debtor and Ms. Westerbeek.

Therefore, Debtor is collaterally estopped from contending in this adversary proceeding that the parties intended the Section 71 payments required under the August 2, 2002 judgment of divorce to be part of the property settlement as opposed to spousal support. However, Debtor is not similarly barred with respect to the remaining two prongs of the *Calhoun/Sorah* test because it was not necessary for the Oakland County Circuit Court to decide either of these other two issues in connection with its separate determination of whether the continued enforcement of the divorce judgment would violate the Section 362(a) automatic stay. The Oakland County Circuit Court's conclusion regarding the parties' intention was sufficient. Indeed, it would appear from *Calhoun* and *Sorah* that these remaining two prongs are properly the subject matter of only the federal courts in conjunction with their exclusive jurisdiction to decide whether a particular debt is dischargeable or not under the bankruptcy laws. Therefore, Debtor may proceed if he wishes with his contention that the Section 71 payments are unnecessary or excessive for purposes of determining dischargeability under Section 523(a)(5).

## CONCLUSION

In summary, I would find in favor of Debtor and declare the Section 71 obligation owed by Debtor to Ms. Westerbeek under the August 2, 2002 judgment of divorce as dischargeable on the basis that: (1) the judgment itself does not support Ms. Westerbeek's contention that that obligation is in the nature of alimony or other support within the meaning of Section 523(a)(5); and (2) Ms. Westerbeek has not offered any extrinsic evidence to support that contention, even were I to allow such evidence on the basis that the judgment is ambiguous. Moreover, Ms. Westerbeek has not persuaded me that the May 4, 2005 order entered by the Oakland County Circuit Court prior to the commencement of Debtor's bankruptcy proceeding bars Debtor from now contending that the Section 71 obligation is not in the nature of spousal support.

However, I am precluded from finding in favor of Debtor on this point because he already had the opportunity to fully litigate this issue before the Oakland County Circuit Court and lost. Specifically, Ms. Westerbeek properly invoked the Oakland County Circuit Court's jurisdiction to determine whether her continued effort to

enforce the Section 71 obligation fell within the Section 362(b)(2) exception and that court did conclude as part of its decision that the Section 71 payments the parties had agreed upon were in the nature of spousal support. Therefore, 28 U.S.C. § 1738 and the doctrine of collateral estoppel bar Debtor from now contending in the Section 523(a)(5) proceeding before me that the Section 71 payments were intended to be part of the property settlement instead.

Of course, disposing of the first prong of the *Calhoun/Sorah* test in Ms. Westerbeek's favor does not end the proceeding before me, for the parties have agreed that trial of the remaining two prongs of that test (*i.e.,* necessity and excessiveness) were to be deferred to a later date because of the dispositive nature of the three issues that I now have addressed. Therefore, by separate order I will schedule a status conference with the parties to discuss setting a date for the trial of these remaining issues and the further pretrial administration of the same. Judgment will be reserved until the final resolution of those remaining matters.